JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: 650) 697-6000
Facsimile: (650) 697-0577

THERESA E. VITALE (SBN 333993)
tvitale@cpmlegal.com
GRACE Y. PARK (SBN 239928)
gpark@cpmlegal.com
**COTCHETT, PITRE & McCARTHY LLP**
2716 Ocean Park Boulevard, Suite 3088
Santa Monica, CA 90405
Telephone: (310) 392-2008
Facsimile: (310) 392-0111

*Attorneys for Relators*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE: SUBPOENA TO NON-PARTY AHI SOLUTIONS, INC.,**<br><br>RELATED TO CASE NO. 2:20-CV-07736-MWF-PD IN THE CENTRAL DISTRICT OF CALIFORNIA | **MISC. CASE NO.: 4:23-mc-80083**<br><br>**JUSTIN T. BERGER'S DECLARATION IN SUPPORT OF *QUI TAM* PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA**<br><br>*[Filed concurrently with* Qui Tam *Plaintiffs' Motion to Compel and Proposed Order]*<br><br>Action filed: August 21, 2020<br>Trial Date: October 24, 2023 |

I, Justin T. Berger, declare:

1. I am an attorney at law duly admitted to practice law in the United States District Court for the Central District of California and Counsel at Cotchett, Pitre & McCarthy LLP, attorneys of record herein for the United States of America ex rel. Curt Canales and Douglas Bellows, Plaintiffs and Relators in the above-entitled action and in the related action, United States of America ex rel. Curt Canales and Doug Bellows v. Nationwide Medical, inc., United States District Court for the Central District of California, Western Division Case No. CV 20-7736 MWF (PDx). I have reviewed the facts as set forth in this Declaration and could testify competently thereto if requested.

2. On September 20, 2022, the originating Court entered into a Stipulated Protective Order for confidential information in this case. A true and correct copy of this Order is attached hereto as **Exhibit A**.

3. On November 3, 2022, Relators served the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action ("subpoena") on AHI Solutions, Inc. ("AHI") via its Registered Agent, Angelo D. Miller. The initial production date on the subpoena was November 30, 2022. A true and correct copy of the subpoena and Proof of Service is attached hereto as **Exhibit B**.

4. Based on discovery conducted thus far in the underlying matter, AHI first entered into an agreement with Defendant Nationwide Medical, Inc. ("NMI") in 2013. A true and correct copy of this agreement is attached hereto as **Exhibit C**.

5. The agreement was renewed the following year and the two companies continued to work together until at least 2019. Pursuant to the agreements, NMI engaged AHI "to provide [equipment setup, Patient instruction, and related services] to [Vendor] Patients." A true and correct copy of the 2019 agreement is attached hereto as **Exhibit D**.

6. The initial production date on the subpoena was November 30, 2022. AHI failed to respond to the subpoena with objections, written responses or documents. Relators sent a follow-up letter to AHI c/o Mr. Miller on December 1, 2022, offering an extension until December 15, 2022. A true and correct copy of this correspondence is attached hereto

as **Exhibit E**.

7. On December 9, 2022, AHI served a cover letter enclosing the 2019 NMI agreement and 17 pages of checks and deposits from 2018 to 2020. A true and correct copy of this correspondence is attached hereto as **Exhibit F.**

8. On February 7, 2023, Relators' counsel sent a letter to AHI asking to schedule a call to confirm whether AHI did not in fact have any other responsive records, given the limited production received. A true and correct copy of this correspondence is attached hereto as **Exhibit G**.

9. On February 22, 2023, Relators' counsel sent another letter, reiterating the request for a phone call and concern related to the limited documents produced thus far. Additionally, Relators' counsel warned that if no response was received by March 7, 2023, Relators would be forced to move to compel all responsive documents. Relators received no response. A true and correct copy of this correspondence is attached hereto as **Exhibit H**.

10. On March 6, 2023, Relators' counsel, Theresa Vitale, called AHI and asked to speak with Mr. Miller. Mr. Miller answered the phone and stated that AHI is not a party to the underlying action and is not obligated to respond. Ms. Vitale attempted to explain to Mr. Miller the reason for the subpoena, follow up letters and phone call, but Mr. Miller hung up after stating that Relators would need to go to Court to require AHI do anything further in response to the subpoena.

11. Relators' Subpoena to AHI was properly issued and served on AHI's registered agent, Angelo Miller, pursuant to FRCP Rule 45(a) and (b) and Defendant NMI received proper prior notice of the Subpoena. A true and correct copy of this Notice is attached hereto as **Exhibit I**.

12. The subpoena included a total number of nine requests for documents. As of today, AHI has produced a total of fifty-one pages of partially responsive documents.

13. As the fact discovery cut-off for this case is April 25, 2023, it is imperative Relators receive these documents as soon as possible.

I declare under the penalty of perjury the laws of the United States of America that the foregoing is true and correct.

Executed this 22 day of March, 2023 in Burlingame, California.

JUSTIN T. BERGER
*Attorney for Relators*

# EXHIBIT A

JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
THERESA E. VITALE (SBN 333993)
tvitale@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 692-3606

*Attorneys for Relators*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* CURT CANALES and DOUG BELLOWS,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONWIDE MEDICAL, INC., a California Corporation; and DOES 1-100, inclusive,<br><br>Defendants. | Case No. 2:20-cv-07736-MWF-PD<br><br>**STIPULATED PROTECTIVE ORDER** [1] |

[1] This Stipulated Protective Order is substantially based on the model protective order provided under Magistrate Judge Patricia Donahue's Procedures.

1. A. PURPOSES AND LIMITATIONS

Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted, including, but not limited to, confidential health information regarding non-parties. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.

B. GOOD CAUSE STATEMENT

This action is likely to involve confidential health information regarding non-parties for which special protection from public disclosure and from use for any purpose other than prosecution of this action is warranted. Such confidential materials and information consist of, among other things, confidential health and medical records of third-party patients, information otherwise generally unavailable to the public, or which may be privileged or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law. Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure the parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial, to address their handling at the end of litigation, and serve the ends of justice, a protective order for such information is justified in this matter. It is the intent of the parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public manner, and there is good cause why it should not be part of the public record of this case.

///

C. ACKNOWLEDGMENT OF PROCEDURE FOR FILING UNDER SEAL

The parties further acknowledge, as set forth in Section 12.3, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Local Civil Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

There is a strong presumption that the public has a right of access to judicial proceedings and records in civil cases. In connection with non-dispositive motions, good cause must be shown to support a filing under seal. See Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1176 (9th Cir. 2006), Phillips v. Gen. Motors Corp., 307 F.3d 1206, 1210-11 (9th Cir. 2002), Makar-Welbon v. Sony Electrics, Inc., 187 F.R.D. 576, 577 (E.D. Wis. 1999) (even stipulated protective orders require good cause showing), and a specific showing of good cause or compelling reasons with proper evidentiary support and legal justification, must be made with respect to Protected Material that a party seeks to file under seal. The parties' mere designation of Disclosure or Discovery Material as CONFIDENTIAL does not—without the submission of competent evidence by declaration, establishing that the material sought to be filed under seal qualifies as confidential, privileged, or otherwise protectable—constitute good cause.

Further, if a party requests sealing related to a dispositive motion or trial, then compelling reasons, not only good cause, for the sealing must be shown, and the relief sought shall be narrowly tailored to serve the specific interest to be protected. See Pintos v. Pacific Creditors Ass'n, 605 F.3d 665, 677-79 (9th Cir. 2010). For each item or type of information, document, or thing sought to be filed or introduced under seal in connection with a dispositive motion or trial, the party seeking protection must articulate compelling reasons, supported by specific facts and legal justification, for the requested sealing order. Again, competent evidence supporting the application to file documents under seal must be provided by declaration.

Any document that is not confidential, privileged, or otherwise protectable in its entirety will not be filed under seal if the confidential portions can be redacted. If documents can be redacted, then a redacted version for public viewing, omitting only the confidential, privileged, or otherwise protectable portions of the document, shall be filed. Any application that seeks to file documents under seal in their entirety should include an explanation of why redaction is not feasible.

2. DEFINITIONS

2.1 Action: United States of America *ex rel*. Curt Canales and Doug Bellows v. Nationwide Medical, Inc., Case No. 2:20-cv-07736-MWF-PD.

2.2 Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

2.3 "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c), and as specified above in the Good Cause Statement. Confidential Information or Items also include, but are not limited to, "Confidential Health Information," which includes "individually identifiable health information" as defined in 45 C.F.R. § 160.103, and "medical information" as defined in Cal. Civil Code § 56.05(j). Any Confidential Health Information/medical information produced may be subject to the provisions of the Privacy Act, 5 U.S.C. § 552a; to the provisions of 45 C.F.R. §§ 164.102-164.534; to the provisions of 42 U.S.C. § 1306; to the provisions of Cal. Civil Code §§ 56.05 et. seq., the California Confidentiality of Medical Information Act; to the peer review confidentiality provisions set forth in California Evidence Code § 1157, and/or to the privacy provisions of various state(s) law(s), and there may be no waiver or authorization by the patient or other holder of privilege/protection to produce the records to any entity outside one of the Parties. All patient files, medical records and documents, or other materials containing individually identifiable health information, and the proceedings and records of peer review committees, shall be deemed to be CONFIDENTIAL.

2.4 Counsel: Outside Counsel of Record and House Counsel (as well as their support staff).

2.5 Designating Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL."

2.6 Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.7 Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this Action.

2.8 House Counsel: attorneys who are employees of a party to this Action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.9 Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.10 Outside Counsel of Record: attorneys who are not employees of a party to this Action but are retained to represent or advise a party to this Action and have appeared in this Action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party and includes support staff.

2.11 Party: any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.12 Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this Action.

2.13 Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.14 Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL."

2.15 Receiving Party: a Party that receives Disclosure or Discovery Material from a Producing Party.

3. SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.

Any use of Protected Material at trial shall be governed by the orders of the trial judge. This Order does not govern the use of Protected Material at trial.

4. DURATION

FINAL DISPOSITION of the action is defined as the conclusion of any appellate proceedings, or, if no appeal is taken, when the time for filing of an appeal has run. Except as set forth below, the terms of this protective order apply through FINAL DISPOSITION of the action. The parties stipulate that they will be contractually bound by the terms of this agreement beyond FINAL DISPOSITION but will have to file a separate action for enforcement of the agreement once all proceedings in this case are complete.

Once a case proceeds to trial, information that was designated as CONFIDENTIAL or maintained pursuant to this protective order used or introduced as an exhibit at trial becomes public and will be presumptively available to all members of the public, including the press, unless compelling reasons supported by specific factual findings to proceed otherwise are made to the trial judge in advance of the trial. See Kamakana, 447 F.3d at 1180-81 (distinguishing "good cause" showing for sealing documents produced in discovery from "compelling reasons" standard when merits-related documents are part of court record). Accordingly, for such materials, the terms

of this protective order do not extend beyond the commencement of the trial.

5. DESIGNATING PROTECTED MATERIAL

5.1 Exercise of Restraint and Care in Designating Material for Protection.

Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the inapplicable designation.

5.2 Manner and Timing of Designations.

Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix at a minimum, the legend "CONFIDENTIAL" (hereinafter "CONFIDENTIAL legend"), to each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party

also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

A Party or Non-Party that makes original documents available for inspection need not designate them for protection until after the inspecting Party has indicated which documents it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "CONFIDENTIAL." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL legend" to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b) for testimony given in depositions that the Designating Party identify the Disclosure or Discovery Material on the record, before the close of the deposition all protected testimony.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information is stored the legend "CONFIDENTIAL." If only a portion or portions of the information warrants protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

5.3 Inadvertent Failures to Designate.

If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

Moreover, any document containing Confidential Health Information/medical

information shall be treated as Protected Material regardless of whether or not such a designation is included in or on the document.

6. CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1 Timing of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.

6.2 Meet and Confer. The Challenging Party shall initiate the dispute resolution process under Local Rule 37.1 et seq.

6.3 The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived or withdrawn the confidentiality designation, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

7. ACCESS TO AND USE OF PROTECTED MATERIAL

7.1 Basic Principles.

A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending, or attempting to settle this Action. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the Action has been terminated, a Receiving Party must comply with the provisions of section 13 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2 Disclosure of "CONFIDENTIAL" Information or Items.

Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated

"CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this Action;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Action;

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) the court and its personnel;

(e) court reporters and their staff;

(f) professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(h) during their depositions, witnesses, and attorneys for witnesses, in the Action to whom disclosure is reasonably necessary provided: (1) the deposing party requests that the witness sign the form attached as Exhibit 1 hereto; and (2) they will not be permitted to keep any confidential information unless they sign the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material may be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order; and

(i) any mediator or settlement officer, and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions.

///

8. PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this Action as "CONFIDENTIAL," that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

9. A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a) The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

Case 2:23-cv-00083-AGD Document 1 Filed 01/20/23 Page 12 of 16 PageID

(b) In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(1) promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2) promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Action, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3) make the information requested available for inspection by the Non-Party, if requested.

(c) If the Non-Party fails to seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

10. UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound"

that is attached hereto as Exhibit A.

11. INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court.

12. MISCELLANEOUS

12.1 Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

12.2 Right to Assert Other Objections. By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

12.3 Filing Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. If a Party's request to file Protected Material under seal is denied by the court, then the Receiving Party may file the information in the public record unless otherwise instructed by the court.

13. FINAL DISPOSITION

After the final disposition of this Action, as defined in paragraph 4, within 60 days

of a written request by the Designating Party, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60 day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2)affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material.

14. Any violation of this Order may be punished by any and all appropriate measures including, without limitation, contempt proceedings and/or monetary sanctions.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

Dated: September 19, 2022

**COTCHETT, PITRE & McCARTHY, LLP**

By: *_/s/Justin T. Berger_*
JUSTIN T. BERGER
THERESA E. VITALE
*Attorneys for Relators*

Dated: September 19, 2022

**JACOBS & DODDS**

By: *_/s/Paul N. Jacobs_*
PAUL N. JACOBS
*Attorney for Defendant Nationwide Medical, Inc.*

Dated: September 19, 2022

**BROWN & FORTUNATO, P.C.**

By: *_/s/Bradley W. Howard_*
BRADLEY W. HOWARD
JARED W. BARTON
*Attorneys for Defendant Nationwide Medical, Inc.*

**FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.**

Dated: September 20, 2022



HON. PATRICIA DONAHUE
United States Magistrate Judge

EXHIBIT A

ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _______________________________ [print or type full name], of _______________________________ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Central District of California on [date] in the case of United States of America *ex rel*. Curt Canales and Doug Bellows v. Nationwide Medical, Inc., Case No. 2:20-cv-07736-MWF-PD. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order. I further agree to submit to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action. I hereby appoint _______________________________ [print or type full name] of _______________________________ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.

Date: ______________________

City and State where sworn and signed: _____________________________________

Printed name: ________________________________________________

Signature: __________________________________________________

# EXHIBIT B

LAW OFFICES
COTCHETT, PITRE & MCCARTHY, LLP
2716 OCEAN PARK BOULEVARD, SUITE 3088
SANTA MONICA, CALIFORNIA 90405
TELEPHONE (310) 392-2008
FACSIMILE (310) 392-0111
www.cpmlegal.com

SAN FRANCISCO BAY AREA
SEATTLE
NEW YORK

November 3, 2022

**VIA PERSONAL SERVICE**
Attn: Angelo D. Miller
AHI Solutions, Inc.
400 29th Street, Suite 208
Oakland, CA 94609

**Re:** ***U.S.A ex rel. Curt Canales and Doug Bellows v. Nationwide Medical, Inc.***
Case No. 2:20-CV-07736-MWF-PD
Subpoena for Production of Business Records: AHI Solutions, Inc.

To Whom it May Concern:

My office represents Relators Curt Canales and Doug Bellows in the above-referenced action against Defendant Nationwide Medical, Inc. brought under the Federal False Claims Act, 31 U.S.C. § 3729, that is pending in the U.S. District Court for the Central District of California.

The lawsuit alleges that in violation of federal law, Defendant caused false claims to be submitted to Medicare and/or private insurers for CPAP/BiPAP devices as part of a nationwide kickback scheme. The documents requested in the enclosed subpoena are necessary to determine whether or to what extent such false claims were submitted within a specified time period (from 2011 to the present).

Please reach out to my colleague, Grace Y. Park, or me via email at gpark@cpmlegal.com and tvitale@cpmlegal.com if you have any questions or concerns regarding the requested documents and we will be happy to set up a time to discuss.

Sincerely,

Theresa Vitale

THERESA E. VITALE

*Enclosures*

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | | |
|---|---|---|
| USA ex rel. Curt Canales and Douglas Bellows<br>*Plaintiff*<br>v.<br>Nationwide Medical, Inc.<br>*Defendant* | ) | Civil Action No. 2:20-CV-07736-MWF-PD |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: AHI Solutions, Inc.; 400 29th St, #208 Oakland, CA 94609
Registered Agent: Angelo D. Miller

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Please see Attachment A. Additionally, please see Exhibit 1, by which certain materials may be designated confidential.

| Place: A&A Legal Service, Inc. 880 Mitten Rd #102, Burlingame, CA 94010<br>Email: lsolomon@aalegalservice.com | Date and Time:<br>11/30/2022 10:00 am |
|---|---|

❐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 11/02/2022

*CLERK OF COURT*

_________________________
*Signature of Clerk or Deputy Clerk*

OR

Theresa Vitale
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* ____________, who issues or requests this subpoena, are:

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 2:20-CV-07736-MWF-PD

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ____________ .

❒ I served the subpoena by delivering a copy to the named person as follows: ______________
______________________________________________
______________________________ on *(date)* ____________ ; or

❒ I returned the subpoena unexecuted because: ______________________
______________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ____________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

# ATTACHMENT A

## DEFINITIONS

1. "YOU," and / or "YOUR" means (a) AHI SOLUTIONS, INC., and its domestic and foreign parents, affiliates, joint venturers, subsidiaries, divisions, predecessors, and successors, including but not limited to any entity of which it, directly or indirectly, at any time, acquired more than 50% of the assets by merger, consolidation, reorganization, purchase, or otherwise, and (b) any entity having at least a 25% legal or beneficial ownership interest in AHI SOLUTIONS, INC., and (c) all medical providers, physicians, surgeons, physician assistants, agents, attorneys, accountants, consultants, independent contractors, directors, employees, executives, officers, personnel, and representatives of any of the foregoing in subparagraphs (a) and (b), and any person or entity acting on behalf of any of the foregoing in subparagraphs (a) and (b) under an assumed name or otherwise.

2. "NATIONWIDE" means Nationwide Medical, Inc., as a California Corporation, and all agents, attorneys, accountants, consultants, independent contractors, directors, employees, executives, officers, personnel, and representatives of any of the foregoing, and any person or entity acting on behalf of any of the foregoing under an assumed name or otherwise.

3. "CPAP" means medical device components that treat sleep apnea, including Continuous Positive Airway Pressure devices and parts and Bilevel Positive Airway Pressure devices and parts.

4. "DOCUMENT" or "DOCUMENTS" refers to all hard-copy and electronic writings of any kind, including the original and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise. This definition of "DOCUMENTS" includes, without limitation, correspondence, memoranda, notes, handwritten notes, diaries, personal diaries,

calendars, statistics, spreadsheets, letters, electronic mail, telegrams, minutes of meetings, contracts, reports, records of any events, studies, audits, text of any kind, statements, receipts, IRS returns, summaries, maps, drawings, working papers, pamphlets, books, periodicals, prospectuses, inter-office and intra-office communications, offers, notations of any sort (including regarding conversations, telephone calls, meetings or other communications), bulletins, printed matters, tapes of all kinds, computer printouts, computerized or electronically stored data, wire to wire communications, teletypes, telefaxes, invoices, worksheets, and each and every electronic or paper draft, alteration, modification, change or amendment of any kind of the foregoing. The definition of "DOCUMENTS" is also intended to include graphic material, including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, and motion pictures, including digitally stored graphic material or graphic material stored on computers.

5. "COMMUNICATION" and "COMMUNICATIONS" means any letter, memorandum, e-mail, note, recording, or other transmission of information from one person or entity to another or between or among two or more persons or entities. The term includes but is not limited to conversations or discussions, whether in person or by means of telephone, teleconference, e-mail, telecopier, or other media, and also includes the circumstances by which YOU came into possession of the document evidencing the communication.

6. "RELEVANT TIME PERIOD" shall mean January 1, 2010 to the present.

## **REQUEST FOR PRODUCTION OF DOCUMENTS**

### **REQUEST NO. 1**

Any and all COMMUNICATIONS between YOU and NATIONWIDE concerning or referencing any agreements, side letters, or side deals, including but

not limited to Equipment Consignment and Services Agreements, YOU negotiated or entered into with NATIONWIDE at any point in time.

**REQUEST NO. 2**

Any and all DOCUMENTS concerning or referencing any agreements, side letters, or side deals, including but not limited to Equipment Consignment and Services Agreements, YOU negotiated or entered into with NATIONWIDE at any point in time.

**REQUEST NO. 3**

Any and all COMMUNICATIONS between YOU and NATIONWIDE concerning or referencing the payment amount and/or payment rate for any agreement, side letter, or side deal produced in response to REQUEST NO. 2, including but not limited to any underlying data or information relied upon concerning the payment amount and/or payment rate.

**REQUEST NO. 4**

Any and all COMMUNICATIONS between YOU and NATIONWIDE concerning, referencing and/or reflecting patient referrals during the RELEVANT TIME PERIOD.

**REQUEST NO. 5**

Any and all DOCUMENTS concerning, referencing and/or reflecting the type, provider, location, and duration of services pursuant to any agreement, side letter, or side deal produced in response to REQUEST NO. 2.

**REQUEST NO. 6**

Any and all DOCUMENTS in YOUR possession, custody or control concerning or referencing arrangements with CPAP suppliers other than NATIONWIDE during the RELEVANT TIME PERIOD.

//

//

**REQUEST NO. 7**

ALL of YOUR billing, reimbursement, payment, recoupment, refund, and/or reconciliation data for all patients that YOU serviced pursuant to any agreements, side letters, or side deals, including but not limited to any Equipment Consignment and Services Agreement, with NATIONWIDE during the RELEVANT TIME PERIOD.

**REQUEST NO. 8**

ALL DOCUMENTS concerning, referencing and/or reflecting goods or services that YOU provided pursuant to any agreements, side letters, or side deals, including but not limited to any Equipment Consignment and Services Agreement, with NATIONWIDE during the RELEVANT TIME PERIOD.

**REQUEST NO. 9**

ALL DOCUMENTS identifying YOUR employees and/or independent contractors during the RELEVANT TIME PERIOD.

# Exhibit 1

JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
THERESA E. VITALE (SBN 333993)
tvitale@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 692-3606

*Attorneys for Relators*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA *ex rel.* CURT CANALES and DOUG BELLOWS,

Plaintiffs,

v.

NATIONWIDE MEDICAL, INC., a California Corporation; and DOES 1-100, inclusive,

Defendants.

Case No. 2:20-cv-07736-MWF-PD

**STIPULATED PROTECTIVE ORDER** [1]

[1] This Stipulated Protective Order is substantially based on the model protective order provided under Magistrate Judge Patricia Donahue's Procedures.

Case 2:23-cv-00053-DG Document 1-1 Filed 01/03/23 Page 34 of 157

1. A. PURPOSES AND LIMITATIONS

Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted, including, but not limited to, confidential health information regarding non-parties. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.

B. GOOD CAUSE STATEMENT

This action is likely to involve confidential health information regarding non-parties for which special protection from public disclosure and from use for any purpose other than prosecution of this action is warranted. Such confidential materials and information consist of, among other things, confidential health and medical records of third-party patients, information otherwise generally unavailable to the public, or which may be privileged or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law. Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure the parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial, to address their handling at the end of litigation, and serve the ends of justice, a protective order for such information is justified in this matter. It is the intent of the parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public manner, and there is good cause why it should not be part of the public record of this case.

///

C. ACKNOWLEDGMENT OF PROCEDURE FOR FILING UNDER SEAL

The parties further acknowledge, as set forth in Section 12.3, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Local Civil Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

There is a strong presumption that the public has a right of access to judicial proceedings and records in civil cases. In connection with non-dispositive motions, good cause must be shown to support a filing under seal. See Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1176 (9th Cir. 2006), Phillips v. Gen. Motors Corp., 307 F.3d 1206, 1210-11 (9th Cir. 2002), Makar-Welbon v. Sony Electrics, Inc., 187 F.R.D. 576, 577 (E.D. Wis. 1999) (even stipulated protective orders require good cause showing), and a specific showing of good cause or compelling reasons with proper evidentiary support and legal justification, must be made with respect to Protected Material that a party seeks to file under seal. The parties' mere designation of Disclosure or Discovery Material as CONFIDENTIAL does not—without the submission of competent evidence by declaration, establishing that the material sought to be filed under seal qualifies as confidential, privileged, or otherwise protectable—constitute good cause.

Further, if a party requests sealing related to a dispositive motion or trial, then compelling reasons, not only good cause, for the sealing must be shown, and the relief sought shall be narrowly tailored to serve the specific interest to be protected. See Pintos v. Pacific Creditors Ass'n, 605 F.3d 665, 677-79 (9th Cir. 2010). For each item or type of information, document, or thing sought to be filed or introduced under seal in connection with a dispositive motion or trial, the party seeking protection must articulate compelling reasons, supported by specific facts and legal justification, for the requested sealing order. Again, competent evidence supporting the application to file documents under seal must be provided by declaration.

Any document that is not confidential, privileged, or otherwise protectable in its entirety will not be filed under seal if the confidential portions can be redacted. If documents can be redacted, then a redacted version for public viewing, omitting only the confidential, privileged, or otherwise protectable portions of the document, shall be filed. Any application that seeks to file documents under seal in their entirety should include an explanation of why redaction is not feasible.

2. DEFINITIONS

2.1 Action: United States of America *ex rel*. Curt Canales and Doug Bellows v. Nationwide Medical, Inc., Case No. 2:20-cv-07736-MWF-PD.

2.2 Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

2.3 "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c), and as specified above in the Good Cause Statement. Confidential Information or Items also include, but are not limited to, "Confidential Health Information," which includes "individually identifiable health information" as defined in 45 C.F.R. § 160.103, and "medical information" as defined in Cal. Civil Code § 56.05(j). Any Confidential Health Information/medical information produced may be subject to the provisions of the Privacy Act, 5 U.S.C. § 552a; to the provisions of 45 C.F.R. §§ 164.102-164.534; to the provisions of 42 U.S.C. § 1306; to the provisions of Cal. Civil Code §§ 56.05 et. seq., the California Confidentiality of Medical Information Act; to the peer review confidentiality provisions set forth in California Evidence Code § 1157, and/or to the privacy provisions of various state(s) law(s), and there may be no waiver or authorization by the patient or other holder of privilege/protection to produce the records to any entity outside one of the Parties. All patient files, medical records and documents, or other materials containing individually identifiable health information, and the proceedings and records of peer review committees, shall be deemed to be CONFIDENTIAL.

2.4 Counsel: Outside Counsel of Record and House Counsel (as well as their support staff).

2.5 Designating Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL."

2.6 Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.7 Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this Action.

2.8 House Counsel: attorneys who are employees of a party to this Action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.9 Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.10 Outside Counsel of Record: attorneys who are not employees of a party to this Action but are retained to represent or advise a party to this Action and have appeared in this Action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party and includes support staff.

2.11 Party: any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.12 Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this Action.

2.13 Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.14 Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL."

2.15 Receiving Party: a Party that receives Disclosure or Discovery Material from a Producing Party.

3. SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.

Any use of Protected Material at trial shall be governed by the orders of the trial judge. This Order does not govern the use of Protected Material at trial.

4. DURATION

FINAL DISPOSITION of the action is defined as the conclusion of any appellate proceedings, or, if no appeal is taken, when the time for filing of an appeal has run. Except as set forth below, the terms of this protective order apply through FINAL DISPOSITION of the action. The parties stipulate that they will be contractually bound by the terms of this agreement beyond FINAL DISPOSITION but will have to file a separate action for enforcement of the agreement once all proceedings in this case are complete.

Once a case proceeds to trial, information that was designated as CONFIDENTIAL or maintained pursuant to this protective order used or introduced as an exhibit at trial becomes public and will be presumptively available to all members of the public, including the press, unless compelling reasons supported by specific factual findings to proceed otherwise are made to the trial judge in advance of the trial. See Kamakana, 447 F.3d at 1180-81 (distinguishing "good cause" showing for sealing documents produced in discovery from "compelling reasons" standard when merits-related documents are part of court record). Accordingly, for such materials, the terms

of this protective order do not extend beyond the commencement of the trial.

5. DESIGNATING PROTECTED MATERIAL

5.1 Exercise of Restraint and Care in Designating Material for Protection.

Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the inapplicable designation.

5.2 Manner and Timing of Designations.

Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix at a minimum, the legend "CONFIDENTIAL" (hereinafter "CONFIDENTIAL legend"), to each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party

also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

A Party or Non-Party that makes original documents available for inspection need not designate them for protection until after the inspecting Party has indicated which documents it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "CONFIDENTIAL." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL legend" to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b) for testimony given in depositions that the Designating Party identify the Disclosure or Discovery Material on the record, before the close of the deposition all protected testimony.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information is stored the legend "CONFIDENTIAL." If only a portion or portions of the information warrants protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

5.3 Inadvertent Failures to Designate.

If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

Moreover, any document containing Confidential Health Information/medical

information shall be treated as Protected Material regardless of whether or not such a designation is included in or on the document.

6. CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1 Timing of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.

6.2 Meet and Confer. The Challenging Party shall initiate the dispute resolution process under Local Rule 37.1 et seq.

6.3 The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived or withdrawn the confidentiality designation, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

7. ACCESS TO AND USE OF PROTECTED MATERIAL

7.1 Basic Principles.

A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending, or attempting to settle this Action. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the Action has been terminated, a Receiving Party must comply with the provisions of section 13 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2 Disclosure of "CONFIDENTIAL" Information or Items.

Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated

"CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this Action;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Action;

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) the court and its personnel;

(e) court reporters and their staff;

(f) professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(h) during their depositions, witnesses, and attorneys for witnesses, in the Action to whom disclosure is reasonably necessary provided: (1) the deposing party requests that the witness sign the form attached as Exhibit 1 hereto; and (2) they will not be permitted to keep any confidential information unless they sign the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material may be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order; and

(i) any mediator or settlement officer, and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions.

///

8. PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this Action as "CONFIDENTIAL," that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

9. A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a) The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b) In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(1) promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2) promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Action, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3) make the information requested available for inspection by the Non-Party, if requested.

(c) If the Non-Party fails to seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

10. UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound"

Case 2:23-cv-03736-M0083-PAG Document 1 Filed 05/23/23 Page 45 of 157

that is attached hereto as Exhibit A.

11. <u>INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL</u>

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court.

12. <u>MISCELLANEOUS</u>

12.1 Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

12.2 Right to Assert Other Objections. By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

12.3 Filing Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. If a Party's request to file Protected Material under seal is denied by the court, then the Receiving Party may file the information in the public record unless otherwise instructed by the court.

13. <u>FINAL DISPOSITION</u>

After the final disposition of this Action, as defined in paragraph 4, within 60 days

of a written request by the Designating Party, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60 day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2)affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material.

14. Any violation of this Order may be punished by any and all appropriate measures including, without limitation, contempt proceedings and/or monetary sanctions.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

Dated: September 19, 2022

**COTCHETT, PITRE & McCARTHY, LLP**

By: *<u>/s/Justin T. Berger</u>*
JUSTIN T. BERGER
THERESA E. VITALE
*Attorneys for Relators*

Dated: September 19, 2022

**JACOBS & DODDS**

By: *<u>/s/Paul N. Jacobs</u>*
PAUL N. JACOBS
*Attorney for Defendant Nationwide Medical, Inc.*

Dated: September 19, 2022

**BROWN & FORTUNATO, P.C.**

By: *<u>/s/Bradley W. Howard</u>*
BRADLEY W. HOWARD
JARED W. BARTON
*Attorneys for Defendant Nationwide Medical, Inc.*

**FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.**

Dated: September 20, 2022

Patricia Donahue

HON. PATRICIA DONAHUE
United States Magistrate Judge

EXHIBIT A

ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, ______________________________ [print or type full name], of ______________________________ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Central District of California on [date] in the case of United States of America *ex rel*. Curt Canales and Doug Bellows v. Nationwide Medical, Inc., Case No. 2:20-cv-07736-MWF-PD. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order. I further agree to submit to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action. I hereby appoint ______________________________ [print or type full name] of ______________________________ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.

Date: ____________________

City and State where sworn and signed: ____________________________________

Printed name: _______________________________________________

Signature: _________________________________________________

| *Attorney or Party without Attorney:* COTCHETT, PITRE & MCCARTHY, LLP, 840 MALCOLM ROAD, STE. 200 BURLINGAME, CA 94010 *Telephone No:* 650-697-6000 *FAX No:* 650-697-0577 | | | | *For Court Use Only* |
|---|---|---|---|---|
| *Attorney for:* Plaintiff | *Ref. No. or File No.:* 2892-SLEEP II QT | | | |
| *Insert name of Court, and Judicial District and Branch Court:* United States District Court For The Central District Of California | | | | |
| *Plaintiff:* USA EX REAL CURT CANALES AND DOUGLAS BELLOWS *Defendant:* NATIONWIDE MEDICAL, INC. | | | | |
| **PROOF OF SERVICE SUBPOENA TO PRODUCE** | *Hearing Date:* Wed, Nov. 30, 2022 | *Time:* 10:00AM | *Dept/Div:* | *Case Number:* 2:20-CV-07736-MWF-PD |

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT; INSPECTION OF PREMISES IN A CIVIL ACTION; COVER LETTER DATED NOVEMBER 3, 2022; STIPULATED PROTECTIVE ORDER

3. *a. Party served:* AHI SOLUTIONS, INC. C/O ANGELO D. MILLER, REGISTERED AGENT
   *b. Person served:* party in item 3.a., African American, Male, 45 Years Old, Bald Hair, Brown Eyes, 5 Feet 6 Inches, 120 Pounds

4. *Address where the party was served:* 400-29TH STREET, #208
   OAKLAND, CA 94609

5. *I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Thu., Nov. 03, 2022 (2) at: 1:55PM
   *b. I received this subpoena for service on:* Thursday, November 03, 2022

6. *Witness fees were not demanded or paid.*

7. ***Person Who Served Papers:***
   a. ANANDA P. BOUGANIM
   **b. A & A LEGAL SERVICE, Inc.**
   880 MITTEN ROAD, SUITE 102
   BURLINGAME, CA 94010
   c. (650) 697-9431, FAX (650) 697-4640

   Recoverable Cost Per CCP 1033.5(a)(4)(B)
   d. ***The Fee** for Service was:*
   e. I am: (3) registered California process server
   *(i)* Employee
   *(ii) Registration No.:* 534
   *(iii) County:* San Mateo
   *(iv) Expiration Date:* Mon, Feb. 19, 2024

8. ***I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.***

***Date: Fri, Nov. 04, 2022***

(ANANDA P. BOUGANIM)

# EXHIBIT C

# EQUIPMENT CONSIGNMENT AND SERVICES AGREEMENT

THIS EQUIPMENT CONSIGNMENT AND SERVICES AGREEMENT ("Agreement") is made this 25th day of July 2013, by and between Nationwide Medical, Inc. ("Nationwide"), a Nevada Corporation, and AHI Solutions, Inc. ("Sleep Lab").

## Background

A. Nationwide is in the business of supplying durable medical equipment and supplies, including continuous positive airway pressure ("CPAP") and bi-level positive airway pressure ("BiPAP") devices, to patients for use in their homes.

B. Sleep Lab operates a facility for the diagnosis and treatment of sleep-related disorders. Patients of Sleep Lab sometimes require CPAP and BiPAP devices.

C. Sleep Lab and Nationwide wish to enter into an arrangement to provide convenient access to CPAP and BiPAP devices for certain Sleep Lab patients who choose to receive equipment from Nationwide and who either i) are not eligible for federally funded health care program benefits or ii) are eligible for federally funded health care program benefits and were diagnosed with an attended facility-based polysomnogram ("Patients").

D. Nationwide often does not have personnel immediately available to provide equipment setup, Patient instruction, and related services, as described in Exhibit A ("Services"), in a timely fashion for Sleep Lab Patients who require CPAP or BiPAP devices. Nationwide wishes to engage Sleep Lab to provide Services to such Patients, and Sleep Lab wishes to accept such engagement, on the terms and subject to the conditions set forth in this Agreement.

## Terms

In consideration of the mutual covenants contained herein, Nationwide and Sleep Lab agree as follows:

1. Consignment of Equipment.

(a) Nationwide will deliver to Sleep Lab's facility, on a consignment basis, sleep-related equipment (the "Inventory"). Nationwide will replace items distributed from the Inventory from time to time. Nationwide may increase, decrease or change the quantity or kinds of equipment in the Inventory as Nationwide deems appropriate, taking into account Sleep Lab's preferences and usage patterns. Sleep Lab will provide suitable storage space for the Inventory at Sleep Lab's facility, and will permit Nationwide reasonable access to such storage space for purposes of verifying and replacing Inventory and as reasonably necessary to carry out the

purposes of this Agreement. Upon the expiration or termination of this Agreement, Nationwide will verify the remaining Inventory and will remove the Inventory from Sleep Lab's facility.

(b) Title to the Inventory will remain with Nationwide, and Sleep Lab will have no ownership interest in the Inventory. Sleep Lab will use reasonable care to prevent loss of or damage to the Inventory. If any portion of the Inventory is lost or damaged due to theft, fire or casualty, Sleep Lab will promptly notify Nationwide and will cooperate as reasonably requested by Nationwide in connection with any insurance claim filed by Nationwide resulting from such theft, fire or casualty.

(c) Before dispensing equipment to a Patient from the Inventory, Sleep Lab will explain to the Patient that he or she may choose to obtain equipment from any supplier of his or her choice. If the Patient elects to obtain equipment from Nationwide, Sleep Lab will ask the Patient to sign the Acknowledgment Form, attached hereto as Exhibit C, and, after the Acknowledgment Form is signed, will provide equipment from the Inventory to the Patient. Sleep Lab will notify Nationwide of the provision of equipment to the Patient, and will provide the Patient's name and insurance information to Nationwide. Sleep Lab will not distribute equipment to any person other than a Patient who has chosen to receive equipment from Nationwide or to any person covered by a federal health care program that was not diagnosed with an attended facility-based polysomnogram. Sleep Lab will not use the equipment provided by Nationwide hereunder to provide any service at Sleep Lab's office, or make any other use of the equipment or permit any other person to make any other use of the equipment, other than as expressly set forth in this Agreement. Nationwide may verify the Inventory from time to time as Nationwide reasonably deems necessary. If Nationwide determines that any equipment is missing from the Inventory for which Sleep Lab has not provided billing information as provided in this section, or for which Sleep Lab has not reported as lost or damaged, Sleep Lab will pay Nationwide for such equipment at its regular retail price. Sleep Lab's obligations under this section will survive expiration or termination of this Agreement.

(d) Nationwide will bill and collect for its own account all charges to Patients and third-party payors, including federally funded health care programs, for equipment distributed to Patients from the Inventory by Sleep Lab. Sleep Lab will cooperate as reasonably requested by Nationwide in obtaining and providing documentation required to support claims for payment for such equipment.

(e) Neither Nationwide nor Sleep Lab will make any payment to the other in connection with the consignment arrangements described in this section.

2. <u>Engagement of Sleep Lab; Services</u>.

(a) Nationwide engages Sleep Lab to provide Services, as described in Exhibit A, to Sleep Lab Patients who require CPAP or BiPAP devices, and who choose to obtain such devices from Nationwide, when Nationwide is not able to provide Services to such Patients

in a timely fashion. Sleep Lab will ensure that (i) all persons it employs or engages to provide Services hereunder are fully qualified to provide Services, and (ii) all Services are provided in accordance with all applicable laws and regulations, Nationwide protocols, policies and procedures (including but not limited to policies regarding safety, infection control, and clinical practice) and operational specifications provided by equipment manufacturers and by Nationwide. Nationwide will provide a copy of its clinical protocols, policies and procedures to Sleep Lab, and may modify any protocol, policy or procedure upon giving ten (10) days' prior written notice to Sleep Lab.

(b) Sleep Lab will provide to Patients Nationwide's 24-hour emergency telephone number.

(c) Nationwide will provide orientation and continuing education to Sleep Lab staff regarding Services, as Nationwide reasonably determines is necessary in its discretion and at its expense.

(d) Sleep Lab will cooperate with Nationwide in the conduct of quality improvement activities.

(e) The parties will work together in good faith to resolve problems that arise in the course of Sleep Lab's provision of Services. Either party may initiate a care conference to address issues relating to the provision of Services to a particular patient.

3. Compensation. As full compensation for the Services, Nationwide will pay Sleep Lab fixed annual compensation of $39,000.00 payable in monthly installments within ten (10) days after the end of each calendar month. Sleep Lab will not be entitled to additional compensation or reimbursement for expenses incurred in the delivery of Services. Sleep Lab will not bill Patients or third-party payors for any Services.

4. Term and Termination. This Agreement will be effective as of the date set forth in the introductory paragraph and will continue in effect through July 24, 2014 (the Expiration Date"). Either party may terminate this Agreement upon ten (10) days' prior written notice if the other party breaches or fails to perform any term or obligation under this Agreement, or if the other party engages in practices that the terminating party reasonably believes are inconsistent with quality patient care. Either party may terminate this Agreement at any time without cause upon giving at least thirty (30) days' prior written notice to the other party. If this Agreement is terminated before the end of its term, the parties will not enter into any contract for the same or similar services until after the Expiration Date.

5. Indemnification. Each party will indemnify and hold harmless the other party and its directors, officers, employees and agents from and against any and all claims, losses, damages and costs, including reasonable attorney's fees, arising out of such party's negligence or willful misconduct in the performance of its obligations under this Agreement.

6. Confidentiality. Sleep Lab will not disclose to any person or entity (i) the existence of any agreement with Nationwide nor (ii) any of the terms of this Agreement. Sleep Lab will not cause or allow the original or a copy of this Agreement to be delivered or transmitted to any person or entity. The information and documentation described in the preceding two sentences will be referred to as "Confidential Information." As an exception to the foregoing, Sleep Lab may disclose Confidential Information as required to comply with the binding order of a governmental entity that has jurisdiction over it, provided that Sleep Lab (i) gives Nationwide reasonable written notice to allow Nationwide to seek a protective order or other appropriate remedy, (ii) discloses only such information as is required by the governmental entity, and (iii) uses commercially reasonable efforts to obtain confidential treatment for any Confidential Information so disclosed.

7. Business Associate Provisions. In providing Services hereunder, Sleep Lab will be acting as a business associate of Nationwide, as that term is used in the Security Standards for the Protection of Electronic Protected Health Information and the Standards for Privacy of Individually Identifiable Health Information (collectively the "HIPAA Standards"), 45 CFR parts 160 and 164. The parties agree to execute the Business Associate Addendum, attached hereto as Exhibit D, to this Agreement in compliance with the HIPAA Standards.

8. Miscellaneous.

(a) Relationship of Parties. The relationship between Sleep Lab and Nationwide established by this Agreement is solely that of independent contractors. Neither party will be considered the legal representative or agent of the other, nor authorized or empowered to assume any obligation of any kind, implied or expressed, on behalf of the other party, except with the express prior written consent of the other party.

(b) Compliance. Nationwide and Sleep Lab, in performance of this arrangement, agree to comply with all applicable laws, rules, regulations and federal health care program requirements, including the requirements set forth in the Anti-Kickback Statute (42 U.S.C. § 1320a-7b(b) and the Stark Law (42 U.S.C. § 1395nn). Attached as Exhibit E is a written Certification of Compliance.

Additionally, Sleep Lab and all other Covered Persons agree to conduct this business relationship consistent with the standards set forth in Nationwide's compliance program, including policies and training related to the Anti-Kickback Statute and Stark Law as well the Code of Conduct, copies of which are attached hereto as Exhibit F. "Covered Persons" includes all contractors, subcontractors, agents, and other persons who provide patient care items or services on behalf of Nationwide, but does not include part-time or per diem employees, contractors, subcontracts, agents and other persons who are not reasonably expected to work more than 160 hours per year, except that any such individuals shall become Covered Persons at the point when they work more than 160 hours during the calendar year.

(c) Assignment; Binding Effect. This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; provided, however, that this Agreement will not be assignable by either party without the other party's written consent.

(d) No Waiver. Neither the waiver by either party of any breach of or default under any of the provisions of this Agreement, nor the failure of either party to enforce any of the provisions of this Agreement or to exercise any right hereunder, will be construed as a waiver of any subsequent breach or default, or a waiver of any rights or provisions hereunder.

(e) Governing Law. This Agreement will be governed by and construed in accordance with the laws of the State of CA. No provision of this Agreement will be applied to or construed in a manner inconsistent with applicable state and federal laws and regulations.

(f) No Third-Party Beneficiaries. No person or entity, other than the parties hereto, will be entitled to bring any action to enforce any provision of this Agreement against a party hereto.

(g) Severability. No provision of this Agreement which is in violation of any state or federal law or regulation will be effective; provided, however, if one or more provisions of this Agreement are determined to be invalid and unenforceable, same will not invalidate the remainder of the Agreement unless the unenforceability or invalidity has the effect of substantially changing the terms and conditions of this Agreement or operates in such a manner as to invalidate or defeat the primary purposes or objectives of this Agreement.

(h) Entire Agreement. This Agreement is the entire agreement between the parties as to its subject matter, and all prior written or oral agreements, promises or representations are incorporated herein. This Agreement may be amended only by a writing executed by the parties.

(i) Notices. Any notice required or permitted to be given under this Agreement will be in writing and will be hand delivered, sent by certified mail with return receipt requested, or delivered by overnight courier service providing written proof of delivery, addressed as follows:

If to Nationwide: Nationwide Medical, Inc.
28632 Roadside Drive, Suite 210
Agoura Hills, CA 91301
Attn: David Siegel, CEO

If to Sleep Lab: AHI Solutions, Inc
400 29th St. Suite 208
Oakland, CA. 94609
Attn: Angelo Miller, President

or to such other address as either party may designate by notice pursuant to this section.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement, or have caused this Agreement to be duly executed on their behalf.

**NATIONWIDE MEDICAL, INC.**

By: [signature]
David Siegel, CEO

Date: 7-29-13

**AHI SOLUTIONS, INC.**

By: [signature]
Angelo Miller, President

Date: 7/25/2013

F:\DOCS\3473\000\AGREEMENT\2323371.DOC

# Exhibit A

## Services

Within a reasonable period of time after notification by Nationwide that a Patient requires Services, Sleep Lab will:

- set up the Nationwide equipment required by the Patient
- provide education and training to the Patient and family on operation and use of equipment, and provide Nationwide's contact information (including 24-hour emergency number) to patient and family
- complete and obtain necessary signatures on the following documents, in the form required by Nationwide, and deliver same to Nationwide.

  a) Delivery Ticket
  b) Copy of Sleep Study Report
  c) Copy of Physician Prescription
  d) Copy of Clinical History Notes from Physician
  e) Patient Orientation Checklist
  f) Patient Acknowledgement Form (Freedom of Choice)

Sleep Lab will receive and immediately forward to Nationwide Patient complaints regarding use of equipment. Sleep Lab will maintain a log that records (i) the date of the complaint, (ii) the identity and contact information of the complainant, (iii) the nature of the complaint, and (iv) the date and time the complaint is forwarded to Nationwide. Sleep Lab will make the log available to Nationwide upon Nationwide's request.

Sleep Lab will document the Services provided on forms supplied by Nationwide and communicate these actions to attending physicians and other appropriate individuals.

Sleep Lab will assist Nationwide as reasonably requested in obtaining the necessary forms and documentation for billing and reimbursement for items and services provided by Nationwide.

Within a reasonable period of time after Nationwide notifies Sleep Lab that a Patient requires refitting of equipment, modification of equipment, or additional education, the Sleep Lab will provide such follow-up services.

**Exhibit B**

**Acknowledgment Form**

I, ______________________________ [*patient name*], am a patient receiving services from ____________. I have been prescribed certain durable medical equipment. I understand that federal law allows me to choose who will be my supplier of durable medical equipment and supplies. I understand that I will receive the same care and treatment from ___________________, regardless of my choice of durable medical equipment supplier. I have been provided with information regarding durable medical equipment suppliers who provide the type of durable medical equipment I have been prescribed. After considering my options, I choose _________________ [*supplier*] to supply me with the following items:

______________________________________________________________________

______________________________________________________________________

______________________________ ______________

Patient Signature Date

**Exhibit C**

**Business Associate Addendum**

In performing its services for Nationwide ("Covered Entity") hereunder, Sleep Lab ("Business Associate") will be acting as a business associate of Nationwide, as that term is used in the Security Standards for the Protection of Electronic Protected Health Information and the Standards for Privacy of Individually Identifiable Health Information (collectively the "HIPAA Standards"), 45 CFR parts 160 and 164, promulgated under the Health Insurance Portability and Accountability Act of 1996, as amended by the Health Information Technology for Economic and Clinical Health Act (the "HITECH Act," collectively, the "HIPAA Standards.)". The following provisions have been included in this Business Associate Addendum ("Addendum") for purposes of complying with the HIPAA Standards and apply with respect to all Protected Health Information ("PHI"), as defined in 45 CFR § 160.103, created or received by Business Associate in performing its duties under this Services Agreement. To the extent the provisions of this BA Agreement conflict with any provision of the Agreements between the parties, the provisions of this BA Agreement will control.

1. Responsibilities of Business Associate.

(a) Business Associate will not use or disclose PHI other than as permitted or required by this Addendum or as required by law.

(b) Business Associate will use appropriate safeguards to prevent use or disclosure of PHI other than as provided for by this Addendum.

(c) Business Associate will mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of PHI by Business Associate in violation of the requirements of this Addendum.

(d) Business Associate will comply with applicable requirements of 45 CFR Part 164, Subparts C and E, and with other applicable requirements of the HIPAA Standards.

(e) Business Associate will report to Covered Entity (i) any use or disclosure of PHI not provided for by this Addendum of which Business Associate becomes aware, including breaches of unsecured protected health information as required by 45 CFR § 164.410, and (ii) any security incident (as defined in 45 CFR § 164.304) of which it becomes aware.

(f) Business Associate will ensure that any subcontractor or other agent to whom Business Associate provides PHI received from Covered Entity, or created or

received by Business Associate on behalf of Covered Entity, agrees to the same restrictions and conditions that apply to Business Associate through this Addendum with respect to such information, and agrees to implement reasonable and appropriate safeguards to protect the security and privacy of such PHI, by entering into an agreement with Business Associate that meets the applicable requirements of the HIPAA Standards.

(g) Business Associate will make books and records relating to the use and disclosure of PHI received from Covered Entity, or created or received by Business Associate on behalf of Covered Entity, available to the Secretary of Health and Human Services or the Secretary's designee, in a time and manner designated by the Secretary, for purposes of the Secretary determining Covered Entity's compliance with the HIPAA Standards.

(h) At Covered Entity's request, Business Associate will make available PHI in Business Associate's possession to enable Covered Entity to respond to a request by an individual for access to PHI in accordance with 45 CFR § 164.524.

(i) At Covered Entity's request, Business Associate will make available PHI in Business Associate's possession for amendment, and will incorporate any amendments to PHI, in accordance with 42 CFR § 164.526.

(j) Business Associate will document and provide to Covered Entity such disclosures of PHI and information related to such disclosures as would be required for Covered Entity to respond to a request by an individual for an accounting of disclosures of PHI in accordance with 45 CFR § 164.528. Upon receipt of a request for an accounting directly from an individual, Business Associate will provide to the individual an accounting of disclosures made by Business Associate containing the information described in 42 CFR § 164.528.

(k) Business Associate will implement administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of the electronic PHI that it creates, receives, maintains, or transmits on behalf of Covered Entity as required by the HIPAA Standards

(l) Business Associate will notify Covered Entity of any unauthorized acquisition, access, use, or disclosure (collectively "Breach") of PHI as soon as practicable, but not later than five (5) days after Business Associate becomes aware of such Breach. Such notice will include the identification of each individual whose PHI has been, or is reasonably believed by Business Associate to have been, accessed, acquired, or disclosed during such Breach.

2. Permitted Uses and Disclosures by Business Associate.

(a) Business Associate may use or disclose PHI to perform services for or on behalf of Covered Entity as specified in the Agreement, provided that such use or disclosure would not violate the HIPAA Standards if done by Covered Entity or the minimum necessary policies and procedures of Covered Entity.

(b) Business Associate may use PHI (i) for the proper management and administration of Business Associate; or (ii) to carry out Business Associate's legal responsibilities.

(c) Business Associate may disclose PHI (i) for the proper management and administration of Business Associate; or (ii) to carry out Business Associate's legal responsibilities, if (A) the disclosure is required by law; or (B)(1) Business Associate obtains reasonable assurances from the person to whom the information is disclosed that it will be held confidentially and used or further disclosed only as required by law or for the purpose for which it was disclosed to the person; and (2) the person notifies Business Associate of any instances of which it is aware in which the confidentiality of the information has been breached.

3. Noncompliance by Business Associate. Upon Covered Entity's knowledge of a material breach by Business Associate or a material failure by Business Associate to comply with the provisions of this Addendum, Covered Entity may either (i) provide an opportunity for Business Associate to cure the breach or failure or end the violation, and terminate this Addendum if Business Associate does not cure the breach or failure or end the violation within the time specified by Covered Entity; (ii) immediately terminate this Addendum if Business Associate has failed to comply with a material term of this Addendum and cure is not possible; or (iii) if neither termination nor cure is feasible, report the violation to the Secretary.

4. Return or Destruction of PHI upon Termination. Upon termination of the Agreement for any reason, Business Associate will return or destroy all PHI received from Covered Entity, or created or received by Business Associate on behalf of Covered Entity, and all PHI that is in the possession of subcontractors or agents of Business Associate. Business Associate will retain no copies of PHI. In the event that Business Associate determines that returning or destroying the PHI is infeasible, Business Associate will notify Covered Entity of the conditions that make return or destruction infeasible, and will extend the protections of this Addendum to such PHI and limit further uses and disclosures of such PHI to those purposes that make the return or destruction infeasible, for so long as Business Associate maintains such PHI.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.]

IN WITNESS WHEREOF, the undersigned have duly executed this Addendum, or have caused this Addendum to be duly executed on their behalf.

**NATIONWIDE MEDICAL, INC.**

By: ______________________
David Siegel, CEO

Date: 7-29-13

**AHI SOLUTIONS, INC.**

By: ______________________
Angelo Miller, President

**Exhibit D**

**Certification of Compliance**

Nationwide Medical, Inc. ("Client") hereby certifies to AHI Solutions, Inc. ("Company") that Client shall not violate the Anti-Kickback Statute (42 U.S.C. § 1320a-7b(b)) Statute or the Stark Law (42 U.S.C. § 1395nn) in Client's performance of this Agreement, dated July 25th, 2013 by and between Client and Company (the "Agreement").

Company hereby certifies to Client that Company shall not violate the Anti-Kickback Statute (42 U.S.C. § 1320a-7b(b)) Statute or the Stark Law (42 U.S.C. § 1395nn) in the Company's performance of the Agreement.

NATIONWIDE MEDICAL, INC.

By: ______________________
David Siegel, CEO

Date: 7-29-13

AHI SOLUTIONS, INC.

By: ______________________
Angelo Miller, President

Date: 7/25/2013

**Exhibit E**

**Nationwide's Code of Conduct**
**and**
**Stark Law and Anti-Kickback Statute**
**Policies and Procedures**

This Code of Conduct ("Code") applies to all employees and agents of NATIONWIDE MEDICAL, INC. ("NMI"), and each employee and agent is personally responsible for his or her own conduct in complying with this Code.

This Code will be distributed and explained to all employees and agents. In addition, supplemental materials dealing with specific subjects, such as arrangements with vendors or contractors, compliance with patient medical privacy and fraud and abuse laws may be distributed to those employees and agents with responsibilities in those areas.

This Code is not intended to create a contract between NMI and any person or to give any person any rights against NMI. This Code may be modified at any time in the discretion of NMI. In the event of any conflict between this Code and any specific policy of NMI, this Code shall take precedence.

## I. NMI Objective and Mission

The objective of our organization is to enhance the overall quality of life, dignity and well-being of every individual needing services, and to create a more equitable, accessible and efficient healthcare system. All members of our organization have the obligation to act in ways that will merit the trust, confidence and respect of our colleagues, patients, other healthcare providers, business associates and society as a whole. To do so, we must lead lives that embody an exemplary system of values and ethics.

In fulfilling our commitments and obligations to those we serve, we act as moral agents. Since our decisions affect the health and well-being of the individuals and communities we serve, we must evaluate the possible outcomes of those decisions and accept full responsibility for the consequences. We must safeguard and foster the rights, interests and prerogatives of those we serve. The role of moral agent requires that healthcare providers speak out and take actions necessary to promote such rights, interests and prerogatives if they are threatened. Additionally, our organization respects the rights of its employees not to participate in any activities that are in conflict with their cultural values or religious beliefs.

**Mission Statement**

*"Nationwide Medical, Inc. provides excellence in patient care through solutions and devices that enhance quality of life. With patient care as our main focus, we are dedicated to being the leader in our industry and strive to be the patient's first and best choice in the products and services we provide. We maintain and promote the highest standards of our profession, while exceeding industry expectations."*

## II. Compliance with Laws and Regulations

*Comply with all laws and regulations that apply to NMI's operations, business and dealings.*

1. Employees are expected to comply with both the spirit and the letter of all laws that apply to NMI's operations, business and dealings. Employees must cooperate with the government officials who are responsible for administering and enforcing those laws and for monitoring and regulating NMI's activities.

2. If an employee is contacted by a representative of any government agency, the employee must consult his or her supervisor for guidance to insure that the government agency receives full cooperation. Ultimately, the Chief Compliance Officer should be notified if any employee is contacted by a representative of any government regulatory agency.

3. Any questions about interpretations of the rules, regulations, laws or NMI's compliance policies and procedures should be discussed with a manager or supervisor and ultimately with the Compliance Officer, who may seek advice from counsel.

4. Employees should report any actual or suspected violations of this Code to the Compliance Officer. All such reports will be treated in a confidential manner.

## III. Billing and Financial Accounting

*Maintain honest and accurate billing and financial records.*

1. Employees must record all entries in NMI's books and records accurately, honestly and fairly so that such entries reflect the true nature and purpose of the transactions which are being recorded. Books and records must not contain any false or misleading information.

2. NMI's financial reports must fairly and consistently reflect performance and accurately disclose the results of operations. They must also comply with Generally Accepted Accounting Principles, regulations of the Centers for Medicare and Medicaid Services, and other applicable rules.

3. Employees must comply with all internal audit and quality control procedures of NMI. All transactions must be conducted as directed by management.

4. No compromise of the integrity of financial records or financial statements and no "off the books" transactions will be permitted.

5. Any coding shall be determined in accordance with the coding principles established and promulgated by the Centers for Medicare and Medicaid Services and the American Medical Association. Any suspected attempt to code in a manner inconsistent with these guidelines should be reported to the Compliance Officer.

6. Employees will commit to the highest quality of health data submission as evidenced by its accuracy, reliability, timeliness, and validity.

A brief description of the laws that may impact the business conduct of NMI employees is set forth below.

***False Claims Laws***

These laws prohibit anyone knowingly causing any bill or other information to be submitted to Medicare or Medicaid that is false or misleading. Failing to disclose any information that affects an initial or continued right to payment is also illegal in some cases. Violators (both the organization and its staff) can be fined and imprisoned for up to five years and/or excluded from the federal programs. Civil penalties can include triple damages and fines up to $10,000 per claim.

***Civil Money Penalty Law***

This law establishes substantial financial penalties for certain actions, including submitting bills or other information that the person knows or "should know" may result in payments in violation of the many rules of the Medicare and Medicaid programs. Such penalties can be imposed for other conduct, such as financial inducement to patients.

***Federal Anti-kickback Statute***

The federal Anti-Kickback Law prohibits knowingly and willfully offering, paying, soliciting, or receiving, directly or indirectly, anything of value if the purpose is "to induce" the recipient to:

a. refer, order, recommend, or purchase an item or service for which payment may be made under a federal healthcare program such as Medicare or Medicaid; or

b. arrange for someone else to do so. ***Unlike the Stark Law, this statute is not limited to physicians.*** An arrangement that is intended to induce referrals violates

this statute even when the payment is not directly related to the volume or value of referrals and there is no agreement to make referrals.

The law contains certain exceptions. One of the exceptions is for payments to bona fide employees for employment in the provision of Medicare and Medicaid-covered items and services.

The law also authorizes the Secretary of Health and Human Services to adopt additional exceptions, which are generally referred to as "safe harbors." This term is used because if you meet the requirements for a safe harbor, you are assured that the arrangement in question is "safe" or acceptable under this statute. However, unlike a Stark Law exception, failure to conform your business arrangement within the requirements of a safe harbor does not necessarily mean the arrangement is illegal. The ultimate question under this law is whether the arrangement was intended to induce referrals or other steerage of business, unlike the Stark law where intent is not required.

Anyone convicted of violating the federal Anti-Kickback law can be imprisoned for up to five years and fined up to $25,000, as well as lose status as a Medicare/Medicaid provider.

***Stark Law***

The Stark Law makes it illegal for a physician to refer a Medicare or Medicaid patient to a provider for the furnishing of "designated health services" with which the physician or physician's family member has a financial relationship, i.e., a direct or indirect investment interest or compensation arrangement. An ownership or investment interest includes any interest by equity, debt or other means. Such an interest in an entity that has an ownership interest in a second entity constitutes an indirect interest in the second entity.

There are several exceptions to this prohibition. If a physician or physician's family member has such a financial relationship in the provider, the arrangement must fall within an exception. Failure to fall within an exception makes any referral from an affected physician improper, even if the financial arrangement was not intended to induce referrals.

Any person or organization who bills for a service that such person "knows or should know" is in violation of the Stark Law is subject to a penalty up to $15,000 for each such service, liable for refund of the illegal amounts collected, and subject to exclusion from federal programs.

There are many other laws that affect our business but these four have the most significant impact on NMI's day-to-day operations and can affect you personally as an employee or agent of NMI.

## IV. Contracts and Contract Administration

All contracts (including service contracts, leases and joint ventures) with physicians and other parties who are in a position to influence the utilization of NMI's services must be reviewed and approved by the Compliance Officer, the Chief Executive Officer or designee and/or legal counsel if deemed necessary. Any question as to whether a party is a potential source of business should be brought to the attention of the Chief Executive Officer and Compliance Officer prior to the contract's execution. NMI Employees or representatives are prohibited from entering into any agreement with any organization without prior approval of both the Chief Executive Officer and Compliance Officer.

## V. Conflicts of Interest

*Do not engage in any activity that may conflict with the interests of NMI.*

1. Employees must at all times seek to promote, enhance, and protect the interests of NMI, and avoid taking any action which may be adverse to those interests. A conflict of interest arises when an employee's outside activities influence the performance of that employee's responsibilities to NMI in a manner that is contrary to NMI's interests.

Employees must be alert to any situation which may involve even the appearance of a conflict of interest and must disclose that situation promptly to their supervisors.

The following rules deal with some of the situations that may occur:

***Relationships with Suppliers and Competitors***

- Employees who deal with contractors, suppliers and competitors must not take advantage of their position with NMI to obtain personal benefits.
- Employees must not take personal advantage of a business opportunity that may be or appears to be of interest to NMI without the approval of his or her supervisor.
- Employees must not conduct business on behalf of NMI with any company in which the employee has an interest without first disclosing that interest to his or her supervisor.
- Employees must not do business on behalf of NMI with any family member or relative without first disclosing that relationship to their supervisors.

***Gifts and Entertainment***

- Employees should not accept gifts or favors from any person or company that does business or seeks to do business with NMI without prior approval of the employee's supervisor or otherwise in accordance with published policy.

## VI. Fraud and Abuse

*Maintain honest and accurate records concerning the provision of medical or healthcare services, and never offer, pay or receive any money, gifts or services in return for the referral of patients or to induce the purchase of equipment and/or supplies as well as business and services from other suppliers.*

For NMI, the risk of fraud and abuse arises in our relationships with referral sources and our submission of information to payers and regulatory agencies.

Failure to comply with Federal and state laws addressing fraud and abuse in the provision of healthcare services and supplies may result in criminal and civil liability as well as exclusion from participation in the Medicare and Medicaid programs.

*Employees must not engage in any of the following activities, all of which are prohibited by law:*

1. Billing for durable medical equipment and/or supplies not delivered;

2. Misrepresenting or duplicate billing of services actually rendered;

3. Falsely certifying that services were medically necessary;

4. Seeking to collect amounts exceeding the co-payment and/or deductible from a Medicare or Medicaid beneficiary who has assigned benefits; or

5. Soliciting, offering or receiving a kickback, bribe or rebate in exchange for patient referrals.

Employees must be especially vigilant in adhering to the highest ethical standards in conducting business that may implicate the fraud and abuse laws. Employees must not make false statements or misrepresentations at any time. This is especially important for employees charged with maintaining patient medical records or other patient identifiable medical information as well as those employees having claims processing and collection responsibilities.

A difficult area in which to recognize violations of the fraud and abuse laws is the prohibition against offering, paying, soliciting or receiving any money, gifts or services in return for the referral of patients or to induce the purchase of items or services. Employees faced with situations that may appear to be questionable under the fraud and abuse laws should consult with their supervisors for guidance. Any questions about interpretations of the fraud or abuse laws should be discussed with the Compliance Officer. Employees who suspect that a violation of the fraud and abuse laws has occurred should disclose that situation to the Compliance Officer.

Examples of certain types of arrangements that should be avoided include the following:

- ***Referral Agreements.*** Any oral or written agreement of any kind, express or implied, under which a non-employee of NMI agrees in any manner to utilize, order or refer organization services, even if limited or conditional in nature, is inappropriate to the extent any remuneration is being provided to that party.

- ***Gifts.*** Gifts to physicians or other parties who are in a position to influence utilization of organization services are not appropriate under any circumstances.

- ***Threats of Reprisals.*** It is not appropriate or acceptable to attempt to coerce physicians or other parties who are in a position to influence utilization of organization services by threatening to withhold, terminate or modify any existing or prospective contract, agreement, or other arrangement or economic benefit.

- ***Leases.*** Space or equipment leases with physicians or other parties who are in a position to influence utilization of organization services must be set forth in writing and be commercially reasonable, even if no referrals are made. The rent must be fair market value and may not be determined in a manner that takes into account the volume or value of referrals from the provider. The fair rental value determination must exclude consideration of additional value either party may attribute to the premises or equipment due to its proximity or convenience to sources of referrals. The term of the lease must be at least one year. (Leases that allow termination without cause during the first year will not qualify even if they have been in effect for more than one year.) If for part-time use, the lease must specify exactly the schedule of intervals of use, their precise length, and the exact rent for such intervals.

- ***Patient Inducements.*** Patients may not be offered direct or indirect financial or other incentives to utilize organization services. Marketing or promotional items (trinkets such as mugs, pens, tee shirts, etc.) may be given to patients, provided that their value is minimal (Retail value of $10 per item or $50 in the aggregate) and they are not provided in order to influence decisions.

- ***Waiver of Deductibles and Copayments.*** Copayment requirements may not be disregarded or forgiven except in certain, limited circumstances. Any proposed policy or method of operating in this area must be approved in advance by legal counsel. Individual patient administrative allowances for patient services that write off a portion or all of the copayment amount are permissible on a case-by-case basis, but only after a patient/family financial statement is completed which clearly supports the patient's/family's inability to pay. Information on the financial statement should be independently verified through a credit bureau check or other means. Patients and families should never be told that they do not have to worry about paying the copayment amount. Genuine, good-faith efforts must be made to collect self-payment amounts before they are written off.

## VII. Physician Orders and Certificates of Medical Necessity

*Only the attending/referring physician may provide the physician order(s) for the provision of NMI goods and services.*

1. The appropriate physician order(s) are to be obtained in accordance with NMI policy. Certificates of Medical Necessity, if necessary, must also be timely received from the attending/referring physician and shall document the date that NMI goods and services may begin or continue.

2. Diagnoses are clinically determined by the physician and are never made to suit Available insurance benefits. NMI guidelines must be followed in connection with the obtaining and retention of physician orders and Certificates of Medical Necessity.

## VIII. Medical Documentation

*Medical records documentation must meet the requirements of all applicable laws, regulations and, where applicable, accreditation standards (JCAHO, Medicare etc.).*

1. Where appropriate, medical records documentation should reflect the standards or requirements of third-party payors or their outside review agents.

2. It is not appropriate to avoid enforcing documentation requirements for fear of the impact such action might have on internal department goals and/or payment or reimbursement.

## IX. Confidential Business Information

*Do not disclose confidential business information to unauthorized persons.*

1. Employees will learn about trade secrets, commercially sensitive information, and financial information about NMI. Employees must not disclose that confidential

information to unauthorized persons so long as it remains confidential. Examples of confidential business information include earnings estimates, expansion or curtailment of operations, an increase or decline in business, a merger or acquisition proposal or agreement, borrowings, litigation, unusual management developments, or purchases or sales of substantial assets.

2. Employees must not use such confidential information in a manner that is not related to business activities either during or after their employment with NMI. Confidential information must not be given to competitors, suppliers, and contractors or to other employees who do not have a need to know.

## X. Assignment of Inventions

1. Any inventions and improvements related in any way to the business of NMI that an employee either suggests or creates on their own or with another employee during employment with NMI, shall be the exclusive property of NMI.

2. Employees are expected to fully disclose all inventions or improvements related in any way to the business of NMI that were conceived and developed during their employment with NMI.

## XI. Employees' Rights and Obligations

*Maintain a working environment free from harassment, illegal drugs, alcohol and unlawful discrimination.*

1. NMI's success is a direct result of the skills and efforts of its employees. It is NMI's policy to deal with employees fairly and honestly and to respect and recognize each employee as an individual.

   NMI believes that direct communication between employees and their supervisors is the best method for dealing with matters that affect employees. For further information about human resources policies, please refer to the NMI Employee Handbook and Benefits guide or consult with NMI's Human Resource Manager.

2. NMI is an equal opportunity employer. Employees will be recruited, hired, compensated, trained, promoted, transferred, demoted and terminated in accordance with NMI's employment policies. Any employee who believes he or she has been unlawfully discriminated against should promptly report the facts of the incident to any level of management or to any member of the Human Resources Department.

3. NMI strictly prohibits unlawful harassment, including sexual harassment. Employees are required to comply with NMI's policy against sexual harassment. Any employee who

believes he or she has been unlawfully harassed should promptly report the facts of the incident to any level of management or to Human Resources.

4. NMI is committed to providing an efficient and productive working environment. Employees must perform their job duties safely, competently, efficiently, and in a manner that protects NMI's interests and those of their co-workers. Employees are expected to conduct themselves in a manner that reflects integrity, brings credit to NMI and meets its obligation to provide quality care to patients. Any involvement with (i) drug abuse or (ii) consumption of alcohol in the work place (except as specifically authorized by executive management for a meeting or event held on NMI premises) by employees is prohibited and will result in corrective action, including possible dismissal.

5. NMI is committed to promoting the prevention of health and safety hazards. Employees, who are involved in or witness an accident or occurrence that has caused or may lead to injury to a patient, co-worker or visitor, or that results in damage to property, must notify their direct supervisor immediately.

## XII. Privacy of Medical Information

Policies and procedures are established regarding the proper maintenance of private medical information. The Compliance Committee shall provide appropriate opportunities, on a periodic basis, for NMI employees to review and understand federal and state laws concerning the use and disclosure of any protected health information whether contained in hard copy or original, or computerized.

## XIII. Marketing

NMI is committed to representing its products, services and facilities fairly and honestly. Advertising, marketing and promotional materials may not contain any unfair, inaccurate, or deceptive statements or any exaggerated or unwarranted representations. You should not use any advertising, promotional, or other tactics or materials that unfairly undermine the facilities or services of a competitor.

NMI will also ensure that its marketing strategies and approaches are in accordance with both State and Federal standards and expectations. All questions regarding any marketing strategy that may put NMI in an out-of-compliance situation, should be directed to the Compliance Officer.

## XIV. Antitrust and Trade Regulation

*Avoid activities that reduce or eliminate competition, control prices, allocate markets or exclude competitors.*

1. The policy of NMI has been and continues to be that all employees must strictly comply with the letter and spirit of all antitrust laws of the United States and of the State of California. No officer, employee or agent of NMI has any authority to engage in conduct that does not comply with this policy or to authorize, direct, approve or condone such conduct by any other person.

2. Employees must not only obey the law but should also recognize that all activities should be undertaken based on the assumption that such acts may, at some future time, be reviewed by a governmental investigator. No matter how innocent in fact a particular act may be, if it is one that can lead others to believe that a violation may have occurred, an investigation or other legal action may result.

3. The purpose of the antitrust and trade regulation laws is to protect NMI and other companies from unfair trade practices, promote competition, and preserve the free enterprise system. The antitrust and trade regulation laws are based on the belief that businesses and individuals should act independently in order to serve the economic good of all.

4. Employees must not enter into understandings or agreements (whether written or oral) that reduce or eliminate competition, control prices, allocate markets or exclude competitors. Conduct to avoid includes activities, taken in conjunction with NMI's competitors that affect prices, charges, profits, services or supplier selection.

5. Employees who negotiate and enter into contracts with competitors, potential competitors, contractors or suppliers must do so on a competitive basis based upon such factors as price, quality and service. This policy is especially important for employees having purchasing, planning or marketing responsibilities.

6. Employees faced with situations which appear to be questionable under the antitrust and trade regulation laws should consult with their supervisors for guidance. Any questions about interpretations of the antitrust and trade regulation laws should be discussed with the Compliance Officer, who may seek advice from counsel. An employee who suspects that a violation of the antitrust and trade regulation laws has occurred should disclose that situation to the Compliance Officer.

## XV. Work Environment

*Maintain a safe and healthy working environment*

1. NMI intends to provide a working environment that is free from recognized health and safety hazards. Employees must conduct themselves in a manner, which minimizes potential health and safety hazards and must notify their supervisors of any actual or potential unsafe working conditions or practices.

2. Employees must properly store and dispose of medical and chemical waste in accordance with NMI's environmental policies designed to protect human health, the environment, and the surrounding community.

3. An employee who suspects that a violation of the environmental laws has occurred should disclose that situation to the Compliance Officer

## XVI. Reporting of Violations

NMI is committed to the policy that every employee has a responsibility to report any violation of the Code to his or her supervisor or directly to the Compliance Officer. All supervisors will report any potential violation to the Compliance Officer.

NMI is also committed to establishing an environment that encourages and allows employees to seek and receive prompt guidance before engaging in conduct that may implicate the Code. NMI has also established a confidential reporting system that allows its employees to report fraud and violations of corporate compliance policy, specifically the Code.

Should employees need to report violations of the Code, employees should notify their immediate supervisor or manager who in turn will contact the Compliance Officer. If an employee feels uncomfortable reporting the violation to an immediate supervisor or manager, the employee may also report violations of the code directly to the Compliance Officer. Employees may report violations of the Code to the Compliance Officer anonymously. NMI makes available to all employees, a confidential lock box located in the main lobby area of NMI's corporate suite.

All reports of compliance violations are held as privileged and confidential. NMI reviews every report and does not condone or tolerate any acts of discrimination or retaliation resulting from a good faith reporting of inadvertent or intentional violations of the Code.

**Nationwide Medical's Compliance Officer**
**Phone: (818) 338-3928**
**Fax: (818) 338-3501**
**Compliance@Nationwidemedical.com**

## XVI. Discipline for Violations

The purpose of this section is to state NMI's position on administering equitable and consistent discipline for unsatisfactory conduct in the workplace. The best disciplinary measure is the one that does not have to be enforced and comes from good leadership and fair supervision at all employment levels.

NMI's own best interest lies in ensuring fair treatment of all employees and in making certain that disciplinary actions are prompt, uniform, and impartial. The major purpose of any disciplinary action is to
correct the problem, prevent recurrence, and prepare the employee for satisfactory service in the future.

Although employment with NMI is based on mutual consent and both the employee and NMI have the right to terminate employment at will, with or without cause or advance notice, NMI may use progressive discipline at its discretion. The progressive discipline procedure is not applicable to those employees within their introductory period (90 days).

As each situation must be considered on a case-by-case basis, the following factors should be taken into account in determining the appropriate disciplinary action to impose for a violation of the Code:

1. The nature of the violation and the ramifications of the violation to NMI;
2. The disciplinary action previously imposed for similar violations;
3. Any history of past violations;
4. Whether the violation was willful or unintentional;
5. Whether the individual was directly or indirectly involved in the violation;
6. Whether the violation represented an isolated occurrence or pattern of conduct;
7. If the violation involved a failure to supervise another individual which resulted in the violation of the Code, the extent to which the circumstances reflect lack of diligence;
8. If the violation consisted of retaliation against another individual for reporting a violation or cooperating with an investigation, the nature of such retaliation;
9. Whether the individual in question reported the violation; and
10. The degree to which the individual cooperated with the investigation.

Once these factors have been considered, the Compliance Officer and Compliance Committee must then determine the appropriate disciplinary actions to take. The progressive levels for employee sanctions for Code and other applicable policy violations are as follows:

| LEVEL | VIOLATION INTENT | POSSIBLE SANCTIONS |
|---|---|---|
| 1 | ➢ Unintentional violations as a result of neglect.<br>➢ Unintentional violations as a result of a misunderstanding of instruction, policy or code requirements.<br>➢ Unintentional violations due to lack of training or clarification. | ➢ Employee counseling and training if necessary<br>➢ Verbal warning.<br>➢ Written warning. |
| 2 | ➢ Repeated violations as a result of neglect.<br>➢ Repeated violations as a result of a misunderstanding of instruction, policy or code requirements. | ➢ Employee counseling and written warning.<br>➢ Suspension with or without pay.<br>➢ Termination of employment. |
| 3 | ➢ Intentional and wrongful violation of the Code and other applicable policies.<br>➢ Violations committed under false pretenses.<br>➢ Violations committed for personal gain or malicious harm | ➢ Suspension without pay.<br>➢ Termination of employment for cause. |

Progressive sanctions mean that each violation level could lead to the next if specific violations continue to occur. However, NMI does recognize that certain violations may be serious enough to justify either a suspension, or, in extreme situations, termination of employment without going through the usual progressive sanction levels.

## XVII. Periodic Review of the Code

The Compliance Officer and Compliance Committee will periodically review the code to determine if revisions are appropriate. If revisions are necessary, any revised Code will be

distributed within 30 days after any revisions are finalized. Every employee will certify that they received, understood, and will abide by the revised Code within 30 days of distribution.

**XVIII. Conclusion**

This Code sets forth NMI's guidelines and expectations about proper job-related conduct. However, this Code cannot anticipate every situation that an employee may face. An employee should consult the Compliance Officer or his or her supervisor for guidance if this Code does not provide adequate direction or if the employee is being pressured to compromise his or her behavior, whether by another employee, a client, a physician, a supplier, a competitor or a patient. Any questions about interpretations of the law or the legality of a particular course of conduct should be discussed with the Compliance Officer, who may in turn consult legal counsel.

No employee's concern is too small or unimportant if he or she thinks it implicates policies concerning proper conduct. An employee will find that by seeking guidance, a resolution can be found which will both meet the employee's concerns and be consistent with this Code.

It is not possible to list all the forms of behavior that are considered unacceptable in the workplace. In addition to all of the above-identified situations, the following behaviors are examples of infractions of rules of conduct that may result in disciplinary action, up to and including termination of employment:

- Theft or inappropriate removal or possession of property
- Falsification of timekeeping records
- Illegal or inappropriate destruction of confidential information
- Purposely not reporting mistakes in work that may have legal implications for NMI
- Intentionally not reporting time off from work
- Giving another NMI associate access to log on Ids and passwords
- Working under the influence of alcohol or illegal drugs
- Possession, distribution, sale, transfer, or use of alcohol or illegal drugs in the workplace, while on duty, or while operating employer-owned vehicles or equipment
- Fighting or threatening violence in the workplace
- Boisterous or disruptive activity in the workplace
- Negligence or improper conduct leading to damage of employer-owned or customer-owned property
- Insubordination or other disrespectful conduct
- Violation of safety or health rules
- Smoking in prohibited areas
- Sexual or other unlawful or unwelcome harassment
- Possession of dangerous or unauthorized materials, such as explosives or firearms, in the

workplace

- Excessive absenteeism or any absence without notice
- Unauthorized absence from workstation during the workday
- Unauthorized use of telephones, mail system, or other employer-owned equipment
- Unauthorized disclosure of business "secrets" or confidential information
- Violation of personnel policies
- Unsatisfactory performance or conduct

Employment with NMI is at the mutual consent of NMI and the employee, and either party may terminate that relationship at any time, with or without cause, and with or without advance notice.

# EXHIBIT F

**POLICY TITLE:** The Stark Law and the Anti-kickback Statute

## 1 PURPOSE:

1.1 To provide an understanding of Nationwide Medical, Inc's. ("NMI") commitment to compliance with both the Anti-kickback Statute ("Statute") and the Stark Law ("Law").

1.2 To ensure that any activities that NMI engages in as they relate to referrals, do not violate neither the Anti-kickback Statute nor the Stark Law.

## 2 RESPONSIBILITY AND ENFORCEMENT:

2.1 The Compliance Officer and Compliance Committee will have ultimate responsibility and authority for the enforcement of this policy and procedure.

2.2 Employees of NMI that are responsible for the engagement and maintenance of referral arrangements also have personal responsibility to ensure that those arrangements do not violate the Statute or the Law.

## 3 DEFINITIONS:

3.1 **Anti-kickback Statute ("Statute")** The federal Anti-Kickback Law prohibits knowingly and willfully offering, paying, soliciting, or receiving, directly or indirectly, anything of value if the purpose is "to induce" the recipient to:

c. refer, order, recommend, or purchase an item or service for which payment may be made under a federal healthcare program such as Medicare or Medicaid; or

d. arrange for someone else to do so. Unlike the Stark Law, this statute is not limited to physicians. An arrangement that is intended to induce referrals violates this statute even when the payment is not directly related to the volume or value of referrals and there is no agreement to make referrals.

3.1.1 The Statute does have Safe Harbors and Exceptions that would make certain activities acceptable. The Safe Harbors and include:

- Investments in small health care joint ventures;
- Space rental;
- Equipment rental;
- Personal services and management contracts;

- Employee compensation;
- Price reductions offered to health plans by providers;
- Joint ventures in underserved areas;

3.2 **The Stark Law ("Law")** makes it illegal for a physician to refer a Medicare or Medicaid patient to a provider for the furnishing of "designated health services" with which the physician or the physician's family member has a financial relationship.

3.2.1 General exceptions to both ownership and compensation arrangement prohibitions include physicians' services and In-office ancillary services

3.2.2 Exceptions related to other compensation arrangements include:

- Rental of office space or equipment
- Bona fide employment relationships
- Personal service arrangements
- Remuneration unrelated to the provision of designated health services
- Physician recruitment and retention
- Isolated transactions
- Payments by a physician for items or services

## 4 POLICY:

4.1 NMI will not engage in any activity or enter into any agreement or arrangement that could potentially be a violation of the Statute or the Law.

4.1.1 All referral arrangements between NMI and a third party are subject to a compliance review to ensure that the arrangement does not violate either the Statute or the Law.

4.1.2 The review will include a determination as to whether or the arrangement has the potential to violate either the Statute or the Law in accordance with NMI's Arrangements Policy and Procedure.

4.2 NMI will not conduct business with any third party that engages in activities that could adversely affect the business of NMI because the activities may violate either the Statute or the Law.

4.3 In accordance with *NMI's Arrangements Policy and Procedure*, all referral arrangements and agreements must be approved by legal counsel and Executive and Compliance Management.

4.3.1 The arrangements requiring approval include but are not limited to those arrangements with Internet Lead Generation Companies, Sleep Laboratories, and Physicians.

4.3.2 All arrangements with third parties will include a certification that the arrangement does not violate either the Statute or the Law.

4.4 Any questions, concerns or reports of violations of this policy are to be directed to NMI's Compliance Officer.

# EXHIBIT D

# EQUIPMENT CONSIGNMENT AND SERVICES AGREEMENT

THIS EQUIPMENT CONSIGNMENT AND SERVICES AGREEMENT ("Agreement") is made this 1st day of August 2019, by and between Nationwide Medical, Inc. ("Nationwide"), a Nevada Corporation, and AHI Solutions, Inc. ("Vendor").

## Background

A. Nationwide is in the business of supplying durable medical equipment and supplies, including continuous positive airway pressure ("CPAP") and bi-level positive airway pressure ("BiPAP") devices, to patients for use in their homes.

B. Vendor operates a facility for the treatment of sleep-related disorders. Patients of Vendor sometimes require CPAP and BiPAP devices.

C. Vendor and Nationwide wish to enter into an arrangement to provide convenient access to CPAP and BiPAP devices for certain Vendor patients who choose to receive equipment from Nationwide and who either i) are not eligible for federally funded health care program benefits or ii) are eligible for federally funded health care program benefits and were diagnosed with an attended facility-based polysomnogram ("Patients").

D. Nationwide often does not have personnel immediately available to provide equipment setup, Patient instruction, and related services, as described in Exhibit A ("Services"), in a timely fashion for Vendor. Patients who require CPAP or BiPAP devices. Nationwide wishes to engage Vendor to provide Services to such Patients, and Vendor wishes to accept such engagement, on the terms and subject to the conditions set forth in this Agreement.

## Terms

In consideration of the mutual covenants contained herein, Nationwide and Vendor agree as follows:

1. Consignment of Equipment.

(a) Nationwide will deliver to Vendor's facility, on a consignment basis, sleep-related equipment (the "Inventory"). Nationwide will replace items distributed from the Inventory from time to time. Nationwide may increase, decrease or change the quantity or kinds of equipment in the Inventory as Nationwide deems appropriate, taking into account Vendor's preferences and usage patterns. Vendor will provide suitable storage space for the Inventory at Vendor's facility, and will permit Nationwide reasonable access to such storage space for purposes of verifying and replacing Inventory and as reasonably necessary to carry out the purposes of this Agreement. Upon the expiration or termination of this Agreement, Nationwide will verify the remaining Inventory and will remove the Inventory from Vendor's facility.

(b) Title to the Inventory will remain with Nationwide, and Vendor will have no ownership interest in the Inventory. Vendor will use reasonable care to prevent loss of or damage to the Inventory. If any portion of the Inventory is lost or damaged due to theft, fire or casualty, Vendor will promptly notify Nationwide and will cooperate as reasonably requested by Nationwide in connection with any insurance claim filed by Nationwide resulting from such theft, fire or casualty.

(c) Before dispensing equipment to a Patient from the Inventory, Vendor will explain to the Patient that he or she may choose to obtain equipment from any supplier of his or her choice. If the Patient elects to obtain equipment from Nationwide, Vendor will ask the Patient to sign the Acknowledgment Form, attached hereto as Exhibit B, and, after the Acknowledgment Form is signed, will provide equipment from the Inventory to the Patient. Vendor will notify Nationwide of the provision of equipment to the Patient, and will provide the Patient's name and insurance information to Nationwide. Vendor will not distribute equipment to any person other than a Patient who has chosen to receive equipment from Nationwide or to any person covered by a federal health care program that was not diagnosed with an attended facility-based polysomnogram. Vendor will not use the equipment provided by Nationwide hereunder to provide any service at Vendor's office, or make any other use of the equipment or permit any other person to make any other use of the equipment, other than as expressly set forth in this Agreement. Nationwide may verify the Inventory from time to time as Nationwide reasonably deems necessary. If Nationwide determines that any equipment is missing from the Inventory for which Vendor has not provided billing information as provided in this section, or for which Vendor has not reported as lost or damaged, Vendor will pay Nationwide for such equipment at fair market value. Vendor obligations under this section will survive expiration or termination of this Agreement.

(d) Nationwide will bill and collect for its own account all charges to Patients and third-party payors, including federally funded health care programs, for equipment distributed to Patients from the Inventory by Vendor . Vendor will cooperate as reasonably requested by Nationwide in obtaining and providing documentation required to support claims for payment for such equipment.

(e) Neither Nationwide nor Vendor will make any payment to the other in connection with the consignment arrangements described in this section.

2. Engagement of Vendor; Services.

(a) Nationwide engages Vendor to provide Services, as described in Exhibit A, to Vendor Patients who require CPAP or BiPAP devices, and who choose to obtain such devices from Nationwide, when Nationwide is not able to provide Services to such Patients in a timely fashion. Vendor will ensure that (i) all persons it employs or engages to provide Services hereunder are fully qualified to provide Services, and (ii) all Services are provided in accordance with all applicable laws and regulations, Nationwide protocols, policies and procedures

(including but not limited to policies regarding safety, infection control, and clinical practice) and operational specifications provided by equipment manufacturers and by Nationwide. Nationwide will provide a copy of its clinical protocols, policies and procedures to Vendor, and may modify any protocol, policy or procedure upon giving ten (10) days' prior written notice to Vendor .

(b) Vendor will provide to Patients Nationwide's 24-hour emergency telephone number.

(c) Nationwide will provide orientation and continuing education to Vendor staff regarding Services, as Nationwide reasonably determines is necessary in its discretion and at its expense.

(d) Vendor will cooperate with Nationwide in the conduct of quality improvement activities.

(e) The parties will work together in good faith to resolve problems that arise in the course of Vendor provision of Services. Either party may initiate a care conference to address issues relating to the provision of Services to a particular patient.

3. Compensation. As full compensation for the Services, Nationwide will pay Vendor fixed annual compensation of $27,000.00 payable in equal monthly installments within ten (10) days after the end of each calendar month. Vendor will not be entitled to additional compensation or reimbursement for expenses incurred in the delivery of Services. Vendor will not bill Patients or third-party payors for any Services.

4. Term and Termination. This Agreement will be effective as of the date set forth in the introductory paragraph and will continue in effect through July 31, 2020 (the Expiration Date"). Either party may terminate this Agreement upon ten (10) days' prior written notice if the other party breaches or fails to perform any term or obligation under this Agreement, or if the other party engages in practices that the terminating party reasonably believes are inconsistent with quality patient care. Either party may terminate this Agreement at any time without cause upon giving at least thirty (30) days' prior written notice to the other party. If this Agreement is terminated before the end of its term, the parties will not enter into any contract for the same or similar services until after the Expiration Date.

5. Indemnification. Each party will indemnify and hold harmless the other party and its directors, officers, employees and agents from and against any and all claims, losses, damages and costs, including reasonable attorney's fees, arising out of such party's negligence or willful misconduct in the performance of its obligations under this Agreement.

6. Confidentiality. Vendor will not disclose to any person or entity (i) the existence of any agreement with Nationwide nor (ii) any of the terms of this Agreement. Vendor will not cause or allow the original or a copy of this Agreement to be delivered or transmitted to any

person or entity. The information and documentation described in the preceding two sentences will be referred to as "Confidential Information." As an exception to the foregoing, Vendor may disclose Confidential Information as required to comply with the binding order of a governmental entity that has jurisdiction over it, provided that Vendor(i) gives Nationwide reasonable written notice to allow Nationwide to seek a protective order or other appropriate remedy, (ii) discloses only such information as is required by the governmental entity, and (iii) uses commercially reasonable efforts to obtain confidential treatment for any Confidential Information so disclosed.

7. Business Associate Provisions. In providing Services hereunder, Vendor will be acting as a business associate of Nationwide, as that term is used in the Security Standards for the Protection of Electronic Protected Health Information and the Standards for Privacy of Individually Identifiable Health Information (collectively the "HIPAA Standards"), 45 CFR parts 160 and 164. The parties agree to execute the Business Associate Addendum, attached hereto as Exhibit C, to this Agreement in compliance with the HIPAA Standards.

8. Miscellaneous.

(a) Relationship of Parties. The relationship between Vendor and Nationwide established by this Agreement is solely that of independent contractors. Neither party will be considered the legal representative or agent of the other, nor authorized or empowered to assume any obligation of any kind, implied or expressed, on behalf of the other party, except with the express prior written consent of the other party.

(b) Compliance. Nationwide and Vendor, in performance of this arrangement, agree to comply with all applicable laws, rules, regulations and federal health care program requirements, including the requirements set forth in the Anti-Kickback Statute (42 U.S.C. § 1320a-7b(b) and the Stark Law (42 U.S.C. § 1395nn). Attached as Exhibit D is a written Certification of Compliance.

Additionally, Vendor and all other Covered Persons agree to conduct this business relationship consistent with the standards set forth in Nationwide's compliance program, including policies and training related to the Anti-Kickback Statute and Stark Law as well the Code of Conduct, copies of which are attached hereto as Exhibit F. "Covered Persons" includes all contractors, subcontractors, agents, and other persons who provide patient care items or services on behalf of Nationwide, but does not include part-time or per diem employees, contractors, subcontracts, agents and other persons who are not reasonably expected to work more than 160 hours per year, except that any such individuals shall become Covered Persons at the point when they work more than 160 hours during the calendar year.

(c) Assignment; Binding Effect. This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; provided, however, that this Agreement will not be assignable by either party without the other party's written consent.

(d) No Waiver. Neither the waiver by either party of any breach of or default under any of the provisions of this Agreement, nor the failure of either party to enforce any of the provisions of this Agreement or to exercise any right hereunder, will be construed as a waiver of any subsequent breach or default, or a waiver of any rights or provisions hereunder.

(e) Governing Law. This Agreement will be governed by and construed in accordance with the laws of the State of CA. No provision of this Agreement will be applied to or construed in a manner inconsistent with applicable state and federal laws and regulations.

(f) No Third-Party Beneficiaries. No person or entity, other than the parties hereto, will be entitled to bring any action to enforce any provision of this Agreement against a party hereto.

(g) Severability. No provision of this Agreement which is in violation of any state or federal law or regulation will be effective; provided, however, if one or more provisions of this Agreement are determined to be invalid and unenforceable, same will not invalidate the remainder of the Agreement unless the unenforceability or invalidity has the effect of substantially changing the terms and conditions of this Agreement or operates in such a manner as to invalidate or defeat the primary purposes or objectives of this Agreement.

(h) Entire Agreement. This Agreement is the entire agreement between the parties as to its subject matter, and all prior written or oral agreements, promises or representations are incorporated herein. This Agreement may be amended only by a writing executed by the parties.

(i) Notices. Any notice required or permitted to be given under this Agreement will be in writing and will be hand delivered, sent by certified mail with return receipt requested, or delivered by overnight courier service providing written proof of delivery, addressed as follows:

If to Nationwide: Nationwide Medical, Inc.
29901 Agoura Road
Agoura Hills, CA 91301
Attn: David Siegel, CEO

If to Vendor: AHI Solutions, Inc
400 29th St.
Oakland, CA. 94609
Attn: Angelo Miller, President/GM

or to such other address as either party may designate by notice pursuant to this section.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement, or have caused this Agreement to be duly executed on their behalf.

**NATIONWIDE MEDICAL, INC.**

By: ______________________________
David Siegel, CEO

Date: ______________________________

**AHI SOLUTIONS, INC**

By: ______________________________
Angelo Miller, President/GM

Date: July 31, 2019

# Exhibit A

## Services

Within a reasonable period of time after notification by Nationwide that a Patient requires Services, Vendor will:

- set up the Nationwide equipment required by the Patient
- provide education and training to the Patient and family on operation and use of equipment, and provide Nationwide's contact information (including 24-hour emergency number) to patient and family
- complete and obtain necessary signatures on the following documents, in the form required by Nationwide, and deliver same to Nationwide.

  a) Delivery Ticket
  b) Copy of Sleep Study Report
  c) Copy of Physician Prescription
  d) Copy of Clinical History Notes from Physician
  e) Patient Orientation Checklist
  f) Patient Acknowledgement Form (Freedom of Choice)

Vendor will receive and immediately forward to Nationwide Patient complaints regarding use of equipment. Vendor will maintain a log that records (i) the date of the complaint, (ii) the identity and contact information of the complainant, (iii) the nature of the complaint, and (iv) the date and time the complaint is forwarded to Nationwide. Vendor will make the log available to Nationwide upon Nationwide's request.

Vendor will document the Services provided on forms supplied by Nationwide and communicate these actions to attending physicians and other appropriate individuals.

Vendor will assist Nationwide as reasonably requested in obtaining the necessary forms and documentation for billing and reimbursement for items and services provided by Nationwide.

Within a reasonable period of time after Nationwide notifies Vendor that a Patient requires refitting of equipment, modification of equipment, or additional education, the Vendor will provide such follow-up services.

**Exhibit B**

**Acknowledgment Form**

I, ________________________________ [*patient name*], am a patient receiving services from ______________. I have been prescribed certain durable medical equipment. I understand that federal law allows me to choose who will be my supplier of durable medical equipment and supplies. I understand that I will receive the same care and treatment from ____________________, regardless of my choice of durable medical equipment supplier. I have been provided with information regarding durable medical equipment suppliers who provide the type of durable medical equipment I have been prescribed. After considering my options, I choose __________________ [*supplier*] to supply me with the following items:

______________________________________________________________________

______________________________________________________________________

________________________________ ________________

Patient Signature Date

**Exhibit C**

**Business Associate Addendum**

In performing its services for Nationwide ("Covered Entity") hereunder, Vendor ("Business Associate") will be acting as a business associate of Nationwide, as that term is used in the Security Standards for the Protection of Electronic Protected Health Information and the Standards for Privacy of Individually Identifiable Health Information (collectively the "HIPAA Standards"), 45 CFR parts 160 and 164, promulgated under the Health Insurance Portability and Accountability Act of 1996, as amended by the Health Information Technology for Economic and Clinical Health Act (the "HITECH Act," collectively, the "HIPAA Standards.)". The following provisions have been included in this Business Associate Addendum ("Addendum") for purposes of complying with the HIPAA Standards and apply with respect to all Protected Health Information ("PHI"), as defined in 45 CFR § 160.103, created or received by Business Associate in performing its duties under this Services Agreement. To the extent the provisions of this BA Agreement conflict with any provision of the Agreements between the parties, the provisions of this BA Agreement will control.

1. Responsibilities of Business Associate.

(a) Business Associate will not use or disclose PHI other than as permitted or required by this Addendum or as required by law.

(b) Business Associate will use appropriate safeguards to prevent use or disclosure of PHI other than as provided for by this Addendum.

(c) Business Associate will mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of PHI by Business Associate in violation of the requirements of this Addendum.

(d) Business Associate will comply with applicable requirements of 45 CFR Part 164, Subparts C and E, and with other applicable requirements of the HIPAA Standards.

(e) Business Associate will report to Covered Entity (i) any use or disclosure of PHI not provided for by this Addendum of which Business Associate becomes aware, including breaches of unsecured protected health information as required by 45 CFR § 164.410, and (ii) any security incident (as defined in 45 CFR § 164.304) of which it becomes aware.

(f) Business Associate will ensure that any subcontractor or other agent to whom Business Associate provides PHI received from Covered Entity, or created or received by Business Associate on behalf of Covered Entity, agrees to the same

restrictions and conditions that apply to Business Associate through this Addendum with respect to such information, and agrees to implement reasonable and appropriate safeguards to protect the security and privacy of such PHI, by entering into an agreement with Business Associate that meets the applicable requirements of the HIPAA Standards.

(g) Business Associate will make books and records relating to the use and disclosure of PHI received from Covered Entity, or created or received by Business Associate on behalf of Covered Entity, available to the Secretary of Health and Human Services or the Secretary's designee, in a time and manner designated by the Secretary, for purposes of the Secretary determining Covered Entity's compliance with the HIPAA Standards.

(h) At Covered Entity's request, Business Associate will make available PHI in Business Associate's possession to enable Covered Entity to respond to a request by an individual for access to PHI in accordance with 45 CFR § 164.524.

(i) At Covered Entity's request, Business Associate will make available PHI in Business Associate's possession for amendment, and will incorporate any amendments to PHI, in accordance with 42 CFR § 164.526.

(j) Business Associate will document and provide to Covered Entity such disclosures of PHI and information related to such disclosures as would be required for Covered Entity to respond to a request by an individual for an accounting of disclosures of PHI in accordance with 45 CFR § 164.528. Upon receipt of a request for an accounting directly from an individual, Business Associate will provide to the individual an accounting of disclosures made by Business Associate containing the information described in 42 CFR § 164.528.

(k) Business Associate will implement administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of the electronic PHI that it creates, receives, maintains, or transmits on behalf of Covered Entity as required by the HIPAA Standards

(l) Business Associate will notify Covered Entity of any unauthorized acquisition, access, use, or disclosure (collectively "Breach") of PHI as soon as practicable, but not later than five (5) days after Business Associate becomes aware of such Breach. Such notice will include the identification of each individual whose PHI has been, or is reasonably believed by Business Associate to have been, accessed, acquired, or disclosed during such Breach.

2. <u>Permitted Uses and Disclosures by Business Associate</u>.

(a) Business Associate may use or disclose PHI to perform services for or on behalf of Covered Entity as specified in the Agreement, provided that such use or

disclosure would not violate the HIPAA Standards if done by Covered Entity or the minimum necessary policies and procedures of Covered Entity.

(b) Business Associate may use PHI (i) for the proper management and administration of Business Associate; or (ii) to carry out Business Associate's legal responsibilities.

(c) Business Associate may disclose PHI (i) for the proper management and administration of Business Associate; or (ii) to carry out Business Associate's legal responsibilities, if (A) the disclosure is required by law; or (B)(1) Business Associate obtains reasonable assurances from the person to whom the information is disclosed that it will be held confidentially and used or further disclosed only as required by law or for the purpose for which it was disclosed to the person; and (2) the person notifies Business Associate of any instances of which it is aware in which the confidentiality of the information has been breached.

3. Noncompliance by Business Associate. Upon Covered Entity's knowledge of a material breach by Business Associate or a material failure by Business Associate to comply with the provisions of this Addendum, Covered Entity may either (i) provide an opportunity for Business Associate to cure the breach or failure or end the violation, and terminate this Addendum if Business Associate does not cure the breach or failure or end the violation within the time specified by Covered Entity; (ii) immediately terminate this Addendum if Business Associate has failed to comply with a material term of this Addendum and cure is not possible; or (iii) if neither termination nor cure is feasible, report the violation to the Secretary.

4. Return or Destruction of PHI upon Termination. Upon termination of the Agreement for any reason, Business Associate will return or destroy all PHI received from Covered Entity, or created or received by Business Associate on behalf of Covered Entity, and all PHI that is in the possession of subcontractors or agents of Business Associate. Business Associate will retain no copies of PHI. In the event that Business Associate determines that returning or destroying the PHI is infeasible, Business Associate will notify Covered Entity of the conditions that make return or destruction infeasible, and will extend the protections of this Addendum to such PHI and limit further uses and disclosures of such PHI to those purposes that make the return or destruction infeasible, for so long as Business Associate maintains such PHI.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.]

IN WITNESS WHEREOF, the undersigned have duly executed this Addendum, or have caused this Addendum to be duly executed on their behalf.

**NATIONWIDE MEDICAL, INC.**

By: ______________________________
David Siegel, CEO

Date: ______________________________

**AHI SOLUTIONS, INC.**

By: ______________________________
Angelo Miller, President/GM

Date: July 31, 2019______________________

# Exhibit D

## Certification of Compliance

Nationwide Medical, Inc. ("Client") hereby certifies to AHI Solutions, Inc. ("Company") that Client shall not violate the Anti-Kickback Statute (42 U.S.C. § 1320a-7b(b)) Statute or the Stark Law (42 U.S.C. § 1395nn) in Client's performance of this Agreement, dated August 1, 2019 by and between Client and Company (the "Agreement").

Company hereby certifies to Client that Company shall not violate the Anti-Kickback Statute (42 U.S.C. § 1320a-7b(b)) Statute or the Stark Law (42 U.S.C. § 1395nn) in the Company's performance of the Agreement.

NATIONWIDE MEDICAL, INC.

By: ______________________________
David Siegel, CEO

Date:______________________________

AHI SOLUTIONS, INC.

By: ______________________________
Angelo Miller, President/GM

Date: July 31, 2019________________

## Exhibit E

## Nationwide's Code of Conduct and Stark Law and Anti-Kickback Statute Policies and Procedures

This Code of Conduct ("Code") applies to all employees and agents of NATIONWIDE MEDICAL, INC. ("NMI"), and each employee and agent is personally responsible for his or her own conduct in complying with this Code.

This Code will be distributed and explained to all employees and agents. In addition, supplemental materials dealing with specific subjects, such as arrangements with vendors or contractors, compliance with patient medical privacy and fraud and abuse laws may be distributed to those employees and agents with responsibilities in those areas.

This Code is not intended to create a contract between NMI and any person or to give any person any rights against NMI. This Code may be modified at any time in the discretion of NMI. In the event of any conflict between this Code and any specific policy of NMI, this Code shall take precedence.

### I. NMI Objective and Mission

The objective of our organization is to enhance the overall quality of life, dignity and well-being of every individual needing services, and to create a more equitable, accessible and efficient healthcare system. All members of our organization have the obligation to act in ways that will merit the trust, confidence and respect of our colleagues, patients, other healthcare providers, business associates and society as a whole. To do so, we must lead lives that embody an exemplary system of values and ethics.

In fulfilling our commitments and obligations to those we serve, we act as moral agents. Since our decisions affect the health and well-being of the individuals and communities we serve, we must evaluate the possible outcomes of those decisions and accept full responsibility for the consequences. We must safeguard and foster the rights, interests and prerogatives of those we serve. The role of moral agent requires that healthcare providers speak out and take actions necessary to promote such rights, interests and prerogatives if they are threatened. Additionally, our organization respects the rights of its employees not to participate in any activities that are in conflict with their cultural values or religious beliefs.

## Mission Statement

*"Nationwide Medical, Inc. provides excellence in patient care through solutions and devices that enhance quality of life. With patient care as our main focus, we are dedicated to being the leader in our industry and strive to be the patient's first and best choice in the products and services we provide. We maintain and promote the highest standards of our profession, while exceeding industry expectations."*

## II. Compliance with Laws and Regulations

*Comply with all laws and regulations that apply to NMI's operations, business and dealings.*

1. Employees are expected to comply with both the spirit and the letter of all laws that apply to NMI's operations, business and dealings. Employees must cooperate with the government officials who are responsible for administering and enforcing those laws and for monitoring and regulating NMI's activities.

2. If an employee is contacted by a representative of any government agency, the employee must consult his or her supervisor for guidance to insure that the government agency receives full cooperation. Ultimately, the Chief Compliance Officer should be notified if any employee is contacted by a representative of any government regulatory agency.

3. Any questions about interpretations of the rules, regulations, laws or NMI's compliance policies and procedures should be discussed with a manager or supervisor and ultimately with the Compliance Officer, who may seek advice from counsel.

4. Employees should report any actual or suspected violations of this Code to the Compliance Officer. All such reports will be treated in a confidential manner.

## III. Billing and Financial Accounting

*Maintain honest and accurate billing and financial records.*

1. Employees must record all entries in NMI's books and records accurately, honestly and fairly so that such entries reflect the true nature and purpose of the transactions which are being recorded. Books and records must not contain any false or misleading information.

2. NMI's financial reports must fairly and consistently reflect performance and accurately disclose the results of operations. They must also comply with Generally Accepted Accounting Principles, regulations of the Centers for Medicare and Medicaid Services, and other applicable rules.

3. Employees must comply with all internal audit and quality control procedures of NMI. All transactions must be conducted as directed by management.

4. No compromise of the integrity of financial records or financial statements and no "off the books" transactions will be permitted.

5. Any coding shall be determined in accordance with the coding principles established and promulgated by the Centers for Medicare and Medicaid Services and the American Medical Association. Any suspected attempt to code in a manner inconsistent with these guidelines should be reported to the Compliance Officer.

6. Employees will commit to the highest quality of health data submission as evidenced by its accuracy, reliability, timeliness, and validity.

A brief description of the laws that may impact the business conduct of NMI employees is set forth below.

***False Claims Laws***

These laws prohibit anyone knowingly causing any bill or other information to be submitted to Medicare or Medicaid that is false or misleading. Failing to disclose any information that affects an initial or continued right to payment is also illegal in some cases. Violators (both the organization and its staff) can be fined and imprisoned for up to five years and/or excluded from the federal programs. Civil penalties can include triple damages and fines up to $10,000 per claim.

***Civil Money Penalty Law***

This law establishes substantial financial penalties for certain actions, including submitting bills or other information that the person knows or "should know" may result in payments in violation of the many rules of the Medicare and Medicaid programs. Such penalties can be imposed for other conduct, such as financial inducement to patients.

***Federal Anti-kickback Statute***

The federal Anti-Kickback Law prohibits knowingly and willfully offering, paying, soliciting, or receiving, directly or indirectly, anything of value if the purpose is "to induce" the recipient to:

a. refer, order, recommend, or purchase an item or service for which payment may be made under a federal healthcare program such as Medicare or Medicaid; or

b. arrange for someone else to do so. ***Unlike the Stark Law, this statute is not limited to physicians.*** An arrangement that is intended to induce referrals violates this statute even when the payment is not directly related to the volume or value of referrals and there is no agreement to make referrals.

The law contains certain exceptions. One of the exceptions is for payments to bona fide employees for employment in the provision of Medicare and Medicaid-covered items and services.

The law also authorizes the Secretary of Health and Human Services to adopt additional exceptions, which are generally referred to as "safe harbors." This term is used because if you meet the requirements for a safe harbor, you are assured that the arrangement in question is "safe" or acceptable under this statute. However, unlike a Stark Law exception, failure to conform your business arrangement within the requirements of a safe harbor does not necessarily mean the arrangement is illegal. The ultimate question under this law is whether the arrangement was intended to induce referrals or other steerage of business, unlike the Stark law where intent is not required.

Anyone convicted of violating the federal Anti-Kickback law can be imprisoned for up to five years and fined up to $25,000, as well as lose status as a Medicare/Medicaid provider.

***Stark Law***

The Stark Law makes it illegal for a physician to refer a Medicare or Medicaid patient to a provider for the furnishing of "designated health services" with which the physician or physician's family member has a financial relationship, i.e., a direct or indirect investment interest or compensation arrangement. An ownership or investment interest includes any interest by equity, debt or other means. Such an interest in an entity that has an ownership interest in a second entity constitutes an indirect interest in the second entity.

There are several exceptions to this prohibition. If a physician or physician's family member has such a financial relationship in the provider, the arrangement must fall within an exception. Failure to fall within an exception makes any referral from an affected physician improper, even if the financial arrangement was not intended to induce referrals.

Any person or organization who bills for a service that such person "knows or should know" is in violation of the Stark Law is subject to a penalty up to $15,000 for each such service, liable for refund of the illegal amounts collected, and subject to exclusion from federal programs.

There are many other laws that affect our business but these four have the most significant impact on NMI's day-to-day operations and can affect you personally as an employee or agent of NMI.

## IV. Contracts and Contract Administration

All contracts (including service contracts, leases and joint ventures) with physicians and other parties who are in a position to influence the utilization of NMI's services must be reviewed and approved by the Compliance Officer, the Chief Executive Officer or designee and/or legal counsel if deemed necessary. Any question as to whether a party is a potential source of business should be brought to the attention of the Chief Executive Officer and Compliance Officer prior to the contract's execution. NMI Employees or representatives are prohibited from entering into any agreement with any organization without prior approval of both the Chief Executive Officer and Compliance Officer.

## V. Conflicts of Interest

*Do not engage in any activity that may conflict with the interests of NMI.*

1. Employees must at all times seek to promote, enhance, and protect the interests of NMI, and avoid taking any action which may be adverse to those interests. A conflict of interest arises when an employee's outside activities influence the performance of that employee's responsibilities to NMI in a manner that is contrary to NMI's interests.

Employees must be alert to any situation which may involve even the appearance of a conflict of interest and must disclose that situation promptly to their supervisors.

The following rules deal with some of the situations that may occur:

***Relationships with Suppliers and Competitors***

- Employees who deal with contractors, suppliers and competitors must not take advantage of their position with NMI to obtain personal benefits.
- Employees must not take personal advantage of a business opportunity that may be or appears to be of interest to NMI without the approval of his or her supervisor.
- Employees must not conduct business on behalf of NMI with any company in which the employee has an interest without first disclosing that interest to his or her supervisor.
- Employees must not do business on behalf of NMI with any family member or relative without first disclosing that relationship to their supervisors.

***Gifts and Entertainment***

- Employees should not accept gifts or favors from any person or company that does business or seeks to do business with NMI without prior approval of the employee's supervisor or otherwise in accordance with published policy.

## VI. Fraud and Abuse

*Maintain honest and accurate records concerning the provision of medical or healthcare services, and never offer, pay or receive any money, gifts or services in return for the referral of patients or to induce the purchase of equipment and/or supplies as well as business and services from other suppliers.*

For NMI, the risk of fraud and abuse arises in our relationships with referral sources and our submission of information to payers and regulatory agencies.

Failure to comply with Federal and state laws addressing fraud and abuse in the provision of healthcare services and supplies may result in criminal and civil liability as well as exclusion from participation in the Medicare and Medicaid programs.

*Employees must not engage in any of the following activities, all of which are prohibited by law:*

1. Billing for durable medical equipment and/or supplies not delivered;
2. Misrepresenting or duplicate billing of services actually rendered;
3. Falsely certifying that services were medically necessary;
4. Seeking to collect amounts exceeding the co-payment and/or deductible from a Medicare or Medicaid beneficiary who has assigned benefits; or
5. Soliciting, offering or receiving a kickback, bribe or rebate in exchange for patient referrals.

Employees must be especially vigilant in adhering to the highest ethical standards in conducting business that may implicate the fraud and abuse laws. Employees must not make false statements or misrepresentations at any time. This is especially important for employees charged with maintaining patient medical records or other patient identifiable medical information as well as those employees having claims processing and collection responsibilities.

A difficult area in which to recognize violations of the fraud and abuse laws is the prohibition against offering, paying, soliciting or receiving any money, gifts or services in return for the referral of patients or to induce the purchase of items or services. Employees faced with situations that may appear to be questionable under the fraud and abuse laws should consult with their supervisors for guidance. Any questions about interpretations of the fraud or abuse laws should be discussed with the Compliance Officer. Employees who suspect that a violation of the fraud and abuse laws has occurred should disclose that situation to the Compliance Officer.

Examples of certain types of arrangements that should be avoided include the following:

- ***Referral Agreements.*** Any oral or written agreement of any kind, express or implied, under which a non-employee of NMI agrees in any manner to utilize, order or refer organization services, even if limited or conditional in nature, is inappropriate to the extent any remuneration is being provided to that party.

- ***Gifts.*** Gifts to physicians or other parties who are in a position to influence utilization of organization services are not appropriate under any circumstances.

- ***Threats of Reprisals.*** It is not appropriate or acceptable to attempt to coerce physicians or other parties who are in a position to influence utilization of organization services by threatening to withhold, terminate or modify any existing or prospective contract, agreement, or other arrangement or economic benefit.

- ***Leases.*** Space or equipment leases with physicians or other parties who are in a position to influence utilization of organization services must be set forth in writing and be commercially reasonable, even if no referrals are made. The rent must be fair market value and may not be determined in a manner that takes into account the volume or value of referrals from the provider. The fair rental value determination must exclude consideration of additional value either party may attribute to the premises or equipment due to its proximity or convenience to sources of referrals. The term of the lease must be at least one year. (Leases that allow termination without cause during the first year will not qualify even if they have been in effect for more than one year.) If for part-time use, the lease must specify exactly the schedule of intervals of use, their precise length, and the exact rent for such intervals.

- ***Patient Inducements.*** Patients may not be offered direct or indirect financial or other incentives to utilize organization services. Marketing or promotional items (trinkets such as mugs, pens, tee shirts, etc.) may be given to patients, provided that their value is minimal (Retail value of $10 per item or $50 in the aggregate) and they are not provided in order to influence decisions.

- ***Waiver of Deductibles and Copayments.*** Copayment requirements may not be disregarded or forgiven except in certain, limited circumstances. Any proposed policy or method of operating in this area must be approved in advance by legal counsel. Individual patient administrative allowances for patient services that write off a portion or all of the copayment amount are permissible on a case-by-case basis, but only after a patient/family financial statement is completed which clearly supports the patient's/family's inability to pay. Information on the financial statement should be independently verified through a credit bureau check or other means. Patients and families should never be told that they do not have to worry about paying the copayment amount. Genuine, good-faith efforts must be made to collect self-payment amounts before they are written off.

## VII. Physician Orders and Certificates of Medical Necessity

*Only the attending/referring physician may provide the physician order(s) for the provision of NMI goods and services.*

1. The appropriate physician order(s) are to be obtained in accordance with NMI policy. Certificates of Medical Necessity, if necessary, must also be timely received from the attending/referring physician and shall document the date that NMI goods and services may begin or continue.

2. Diagnoses are clinically determined by the physician and are never made to suit Available insurance benefits. NMI guidelines must be followed in connection with the obtaining and retention of physician orders and Certificates of Medical Necessity.

## VIII. Medical Documentation

*Medical records documentation must meet the requirements of all applicable laws, regulations and, where applicable, accreditation standards (JCAHO, Medicare etc.).*

1. Where appropriate, medical records documentation should reflect the standards or requirements of third-party payors or their outside review agents.

2. It is not appropriate to avoid enforcing documentation requirements for fear of the impact such action might have on internal department goals and/or payment or reimbursement.

## IX. Confidential Business Information

*Do not disclose confidential business information to unauthorized persons.*

1. Employees will learn about trade secrets, commercially sensitive information, and financial information about NMI. Employees must not disclose that confidential information to unauthorized persons so long as it remains confidential. Examples of

confidential business information include earnings estimates, expansion or curtailment of operations, an increase or decline in business, a merger or acquisition proposal or agreement, borrowings, litigation, unusual management developments, or purchases or sales of substantial assets.

2. Employees must not use such confidential information in a manner that is not related to business activities either during or after their employment with NMI. Confidential information must not be given to competitors, suppliers, and contractors or to other employees who do not have a need to know.

## X. Assignment of Inventions

1. Any inventions and improvements related in any way to the business of NMI that an employee either suggests or creates on their own or with another employee during employment with NMI, shall be the exclusive property of NMI.

2. Employees are expected to fully disclose all inventions or improvements related in any way to the business of NMI that were conceived and developed during their employment with NMI.

## XI. Employees' Rights and Obligations

*Maintain a working environment free from harassment, illegal drugs, alcohol and unlawful discrimination.*

1. NMI's success is a direct result of the skills and efforts of its employees. It is NMI's policy to deal with employees fairly and honestly and to respect and recognize each employee as an individual.

   NMI believes that direct communication between employees and their supervisors is the best method for dealing with matters that affect employees. For further information about human resources policies, please refer to the NMI Employee Handbook and Benefits guide or consult with NMI's Human Resource Manager.

2. NMI is an equal opportunity employer. Employees will be recruited, hired, compensated, trained, promoted, transferred, demoted and terminated in accordance with NMI's employment policies. Any employee who believes he or she has been unlawfully discriminated against should promptly report the facts of the incident to any level of management or to any member of the Human Resources Department.

3. NMI strictly prohibits unlawful harassment, including sexual harassment. Employees are required to comply with NMI's policy against sexual harassment. Any employee who believes he or she has been unlawfully harassed should promptly report the facts of the incident to any level of management or to Human Resources.

4. NMI is committed to providing an efficient and productive working environment. Employees must perform their job duties safely, competently, efficiently, and in a manner that protects NMI's interests and those of their co-workers. Employees are expected to conduct themselves in a manner that reflects integrity, brings credit to NMI and meets its obligation to provide quality care to patients. Any involvement with (i) drug abuse or (ii) consumption of alcohol in the work place (except as specifically authorized by executive management for a meeting or event held on NMI premises) by employees is prohibited and will result in corrective action, including possible dismissal.

5. NMI is committed to promoting the prevention of health and safety hazards. Employees, who are involved in or witness an accident or occurrence that has caused or may lead to injury to a patient, co-worker or visitor, or that results in damage to property, must notify their direct supervisor immediately.

## XII. Privacy of Medical Information

Policies and procedures are established regarding the proper maintenance of private medical information. The Compliance Committee shall provide appropriate opportunities, on a periodic basis, for NMI employees to review and understand federal and state laws concerning the use and disclosure of any protected health information whether contained in hard copy or original, or computerized.

## XIII. Marketing

NMI is committed to representing its products, services and facilities fairly and honestly. Advertising, marketing and promotional materials may not contain any unfair, inaccurate, or deceptive statements or any exaggerated or unwarranted representations. You should not use any advertising, promotional, or other tactics or materials that unfairly undermine the facilities or services of a competitor.

NMI will also ensure that its marketing strategies and approaches are in accordance with both State and Federal standards and expectations. All questions regarding any marketing strategy that may put NMI in an out-of-compliance situation, should be directed to the Compliance Officer.

## XIV. Antitrust and Trade Regulation

*Avoid activities that reduce or eliminate competition, control prices, allocate markets or exclude competitors.*

1. The policy of NMI has been and continues to be that all employees must strictly comply with the letter and spirit of all antitrust laws of the United States and of the State of California. No officer, employee or agent of NMI has any authority to engage in conduct that does not comply with this policy or to authorize, direct, approve or condone such conduct by any other person.

2. Employees must not only obey the law but should also recognize that all activities should be undertaken based on the assumption that such acts may, at some future time, be reviewed by a governmental investigator. No matter how innocent in fact a particular act may be, if it is one that can lead others to believe that a violation may have occurred, an investigation or other legal action may result.

3. The purpose of the antitrust and trade regulation laws is to protect NMI and other companies from unfair trade practices, promote competition, and preserve the free enterprise system. The antitrust and trade regulation laws are based on the belief that businesses and individuals should act independently in order to serve the economic good of all.

4. Employees must not enter into understandings or agreements (whether written or oral) that reduce or eliminate competition, control prices, allocate markets or exclude competitors. Conduct to avoid includes activities, taken in conjunction with NMI's competitors that affect prices, charges, profits, services or supplier selection.

5. Employees who negotiate and enter into contracts with competitors, potential competitors, contractors or suppliers must do so on a competitive basis based upon such factors as price, quality and service. This policy is especially important for employees having purchasing, planning or marketing responsibilities.

6. Employees faced with situations which appear to be questionable under the antitrust and trade regulation laws should consult with their supervisors for guidance. Any questions about interpretations of the antitrust and trade regulation laws should be discussed with the Compliance Officer, who may seek advice from counsel. An employee who suspects that a violation of the antitrust and trade regulation laws has occurred should disclose that situation to the Compliance Officer.

## XV. Work Environment

*Maintain a safe and healthy working environment*

1. NMI intends to provide a working environment that is free from recognized health and safety hazards. Employees must conduct themselves in a manner, which minimizes

potential health and safety hazards and must notify their supervisors of any actual or potential unsafe working conditions or practices.

2. Employees must properly store and dispose of medical and chemical waste in accordance with NMI's environmental policies designed to protect human health, the environment, and the surrounding community.

3. An employee who suspects that a violation of the environmental laws has occurred should disclose that situation to the Compliance Officer

## XVI. Reporting of Violations

NMI is committed to the policy that every employee has a responsibility to report any violation of the Code to his or her supervisor or directly to the Compliance Officer. All supervisors will report any potential violation to the Compliance Officer.

NMI is also committed to establishing an environment that encourages and allows employees to seek and receive prompt guidance before engaging in conduct that may implicate the Code. NMI has also established a confidential reporting system that allows its employees to report fraud and violations of corporate compliance policy, specifically the Code.

Should employees need to report violations of the Code, employees should notify their immediate supervisor or manager who in turn will contact the Compliance Officer. If an employee feels uncomfortable reporting the violation to an immediate supervisor or manager, the employee may also report violations of the code directly to the Compliance Officer. Employees may report violations of the Code to the Compliance Officer anonymously. NMI makes available to all employees, a confidential lock box located in the main lobby area of NMI's corporate suite.

All reports of compliance violations are held as privileged and confidential. NMI reviews every report and does not condone or tolerate any acts of discrimination or retaliation resulting from a good faith reporting of inadvertent or intentional violations of the Code.

**Nationwide Medical's Compliance Officer**
**Phone:** **(818) 338-3928**
**Fax:** **(818) 338-3501**
**Compliance@Nationwidemedical.com**

## XVI. Discipline for Violations

The purpose of this section is to state NMI's position on administering equitable and consistent discipline for unsatisfactory conduct in the workplace. The best disciplinary measure is the one that does not have to be enforced and comes from good leadership and fair supervision at all employment levels.

potential health and safety hazards and must notify their supervisors of any actual or potential unsafe working conditions or practices.

2. Employees must properly store and dispose of medical and chemical waste in accordance with NMI's environmental policies designed to protect human health, the environment, and the surrounding community.

3. An employee who suspects that a violation of the environmental laws has occurred should disclose that situation to the Compliance Officer

## XVI. Reporting of Violations

NMI is committed to the policy that every employee has a responsibility to report any violation of the Code to his or her supervisor or directly to the Compliance Officer. All supervisors will report any potential violation to the Compliance Officer.

NMI is also committed to establishing an environment that encourages and allows employees to seek and receive prompt guidance before engaging in conduct that may implicate the Code. NMI has also established a confidential reporting system that allows its employees to report fraud and violations of corporate compliance policy, specifically the Code.

Should employees need to report violations of the Code, employees should notify their immediate supervisor or manager who in turn will contact the Compliance Officer. If an employee feels uncomfortable reporting the violation to an immediate supervisor or manager, the employee may also report violations of the code directly to the Compliance Officer. Employees may report violations of the Code to the Compliance Officer anonymously. NMI makes available to all employees, a confidential lock box located in the main lobby area of NMI's corporate suite.

All reports of compliance violations are held as privileged and confidential. NMI reviews every report and does not condone or tolerate any acts of discrimination or retaliation resulting from a good faith reporting of inadvertent or intentional violations of the Code.

**Nationwide Medical's Compliance Officer**
**Phone: (818) 338-3928**
**Fax: (818) 338-3501**
**Compliance@Nationwidemedical.com**

## XVI. Discipline for Violations

The purpose of this section is to state NMI's position on administering equitable and consistent discipline for unsatisfactory conduct in the workplace. The best disciplinary measure is the one that does not have to be enforced and comes from good leadership and fair supervision at all employment levels.

NMI's own best interest lies in ensuring fair treatment of all employees and in making certain that disciplinary actions are prompt, uniform, and impartial. The major purpose of any disciplinary action is to
correct the problem, prevent recurrence, and prepare the employee for satisfactory service in the future.

Although employment with NMI is based on mutual consent and both the employee and NMI have the right to terminate employment at will, with or without cause or advance notice, NMI may use progressive discipline at its discretion. The progressive discipline procedure is not applicable to those employees within their introductory period (90 days).

As each situation must be considered on a case-by-case basis, the following factors should be taken into account in determining the appropriate disciplinary action to impose for a violation of the Code:

1. The nature of the violation and the ramifications of the violation to NMI;
2. The disciplinary action previously imposed for similar violations;
3. Any history of past violations;
4. Whether the violation was willful or unintentional;
5. Whether the individual was directly or indirectly involved in the violation;
6. Whether the violation represented an isolated occurrence or pattern of conduct;
7. If the violation involved a failure to supervise another individual which resulted in the violation of the Code, the extent to which the circumstances reflect lack of diligence;
8. If the violation consisted of retaliation against another individual for reporting a violation or cooperating with an investigation, the nature of such retaliation;
9. Whether the individual in question reported the violation; and
10. The degree to which the individual cooperated with the investigation.

Once these factors have been considered, the Compliance Officer and Compliance Committee must then determine the appropriate disciplinary actions to take. The progressive levels for employee sanctions for Code and other applicable policy violations are as follows:

| LEVEL | VIOLATION INTENT | POSSIBLE SANCTIONS |
|---|---|---|

| | | |
|---|---|---|
| 1 | ➢ Unintentional violations as a result of neglect.<br>➢ Unintentional violations as a result of a misunderstanding of instruction, policy or code requirements.<br>➢ Unintentional violations due to lack of training or clarification. | ➢ Employee counseling and training if necessary<br>➢ Verbal warning.<br>➢ Written warning. |
| 2 | ➢ Repeated violations as a result of neglect.<br>➢ Repeated violations as a result of a misunderstanding of instruction, policy or code requirements. | ➢ Employee counseling and written warning.<br>➢ Suspension with or without pay.<br>➢ Termination of employment. |
| 3 | ➢ Intentional and wrongful violation of the Code and other applicable policies.<br>➢ Violations committed under false pretenses.<br>➢ Violations committed for personal gain or malicious harm | ➢ Suspension without pay.<br>➢ Termination of employment for cause. |

Progressive sanctions mean that each violation level could lead to the next if specific violations continue to occur. However, NMI does recognize that certain violations may be serious enough to justify either a suspension, or, in extreme situations, termination of employment without going through the usual progressive sanction levels.

## XVII. Periodic Review of the Code

The Compliance Officer and Compliance Committee will periodically review the code to determine if revisions are appropriate. If revisions are necessary, any revised Code will be distributed within 30 days after any revisions are finalized. Every employee will certify that they received, understood, and will abide by the revised Code within 30 days of distribution.

## XVIII. Conclusion

This Code sets forth NMI's guidelines and expectations about proper job-related conduct. However, this Code cannot anticipate every situation that an employee may face. An employee should consult the Compliance Officer or his or her supervisor for guidance if this Code does not

provide adequate direction or if the employee is being pressured to compromise his or her behavior, whether by another employee, a client, a physician, a supplier, a competitor or a patient. Any questions about interpretations of the law or the legality of a particular course of conduct should be discussed with the Compliance Officer, who may in turn consult legal counsel.

No employee's concern is too small or unimportant if he or she thinks it implicates policies concerning proper conduct. An employee will find that by seeking guidance, a resolution can be found which will both meet the employee's concerns and be consistent with this Code.

It is not possible to list all the forms of behavior that are considered unacceptable in the workplace. In addition to all of the above-identified situations, the following behaviors are examples of infractions of rules of conduct that may result in disciplinary action, up to and including termination of employment:

- Theft or inappropriate removal or possession of property
- Falsification of timekeeping records
- Illegal or inappropriate destruction of confidential information
- Purposely not reporting mistakes in work that may have legal implications for NMI
- Intentionally not reporting time off from work
- Giving another NMI associate access to log on Ids and passwords
- Working under the influence of alcohol or illegal drugs
- Possession, distribution, sale, transfer, or use of alcohol or illegal drugs in the workplace, while on duty, or while operating employer-owned vehicles or equipment
- Fighting or threatening violence in the workplace
- Boisterous or disruptive activity in the workplace
- Negligence or improper conduct leading to damage of employer-owned or customer-owned property
- Insubordination or other disrespectful conduct
- Violation of safety or health rules
- Smoking in prohibited areas
- Sexual or other unlawful or unwelcome harassment
- Possession of dangerous or unauthorized materials, such as explosives or firearms, in the workplace
- Excessive absenteeism or any absence without notice
- Unauthorized absence from workstation during the workday
- Unauthorized use of telephones, mail system, or other employer-owned equipment
- Unauthorized disclosure of business "secrets" or confidential information
- Violation of personnel policies
- Unsatisfactory performance or conduct

Employment with NMI is at the mutual consent of NMI and the employee, and either party may

terminate that relationship at any time, with or without cause, and with or without advance notice.

**EXHIBIT E**

**POLICY TITLE:** The Stark Law and the Anti-kickback Statute

## 1 PURPOSE:

1.1 To provide an understanding of Nationwide Medical, Inc's. ("NMI") commitment to compliance with both the Anti-kickback Statute ("Statute") and the Stark Law ("Law").

1.2 To ensure that any activities that NMI engages in as they relate to referrals, do not violate neither the Anti-kickback Statute nor the Stark Law.

## 2 RESPONSIBILITY AND ENFORCEMENT:

2.1 The Compliance Officer and Compliance Committee will have ultimate responsibility and authority for the enforcement of this policy and procedure.

2.2 Employees of NMI that are responsible for the engagement and maintenance of referral arrangements also have personal responsibility to ensure that those arrangements do not violate the Statute or the Law.

## 3 DEFINITIONS:

3.1 **Anti-kickback Statute ("Statute")** The federal Anti-Kickback Law prohibits knowingly and willfully offering, paying, soliciting, or receiving, directly or indirectly, anything of value if the purpose is "to induce" the recipient to:

c. refer, order, recommend, or purchase an item or service for which payment may be made under a federal healthcare program such as Medicare or Medicaid; or

d. arrange for someone else to do so. Unlike the Stark Law, this statute is not limited to physicians. An arrangement that is intended to induce referrals violates this statute even when the payment is not directly related to the volume or value of referrals and there is no agreement to make referrals.

3.1.1 The Statute does have Safe Harbors and Exceptions that would make certain activities acceptable. The Safe Harbors and include:

- Investments in small health care joint ventures;
- Space rental;
- Equipment rental;
- Personal services and management contracts;
- Employee compensation;
- Price reductions offered to health plans by providers;
- Joint ventures in underserved areas;

3.2 **The Stark Law ("Law")** makes it illegal for a physician to refer a Medicare or Medicaid patient to a provider for the furnishing of "designated health services" with which the physician or the physician's family member has a financial relationship.

3.2.1 General exceptions to both ownership and compensation arrangement prohibitions include physicians' services and In-office ancillary services

3.2.2 Exceptions related to other compensation arrangements include:

- Rental of office space or equipment
- Bona fide employment relationships
- Personal service arrangements
- Remuneration unrelated to the provision of designated health services
- Physician recruitment and retention
- Isolated transactions
- Payments by a physician for items or services

**4 POLICY:**

4.1 NMI will not engage in any activity or enter into any agreement or arrangement that could potentially be a violation of the Statute or the Law.

4.1.1 All referral arrangements between NMI and a third party are subject to a compliance review to ensure that the arrangement does not violate either the Statute or the Law.

4.1.2 The review will include a determination as to whether or the arrangement has the potential to violate either the Statute or the Law in accordance with NMI's Arrangements Policy and Procedure.

4.2 NMI will not conduct business with any third party that engages in activities that could adversely affect the business of NMI because the activities may violate either the Statute or the Law.

4.3 In accordance with *NMI's Arrangements Policy and Procedure*, all referral arrangements and agreements must be approved by legal counsel and Executive and Compliance Management.

4.3.1 The arrangements requiring approval include but are not limited to those arrangements with Internet Lead Generation Companies, Sleep Laboratories, and Physicians.

4.3.2 All arrangements with third parties will include a certification that the arrangement does not violate either the Statute or the Law.

4.4 Any questions, concerns or reports of violations of this policy are to be directed to NMI's Compliance Officer.

# EXHIBIT E

LAW OFFICES
COTCHETT, PITRE & MCCARTHY, LLP
2716 OCEAN PARK BOULEVARD, SUITE 3088
SANTA MONICA, CALIFORNIA 90405
TELEPHONE (310) 392-2008
FACSIMILE (310) 392-0111
www.cpmlegal.com

SAN FRANCISCO BAY AREA
SEATTLE
NEW YORK

December 1, 2022

**VIA CERTIFIED MAIL**
Attn: Angelo D. Miller
400 29th Street, Suite 208
Oakland, CA 94609

**Re:** ***U.S.A ex rel. Curt Canales and Doug Bellows v. Nationwide Medical, Inc.***
Case No. 2:20-CV-07736-MWF-PD
Subpoena for Production of Business Records: AHI Solutions, Inc.

To Whom it May Concern:

My office represents Relators Curt Canales and Doug Bellows on behalf of the United States in a civil lawsuit against Defendants Nationwide Medical, Inc. You were served with the enclosed subpoena on November 4, 2022 for production of documents related to the above titled matter.

The deadline to respond of November 30, 2022 has passed under Fed. R. Civ. P. 45, but as a courtesy we will provide an extension of two weeks, making your response due on December 15, 2022. Of course, should you need more time to comply in light of the circumstances, please reach out to my colleague, Grace Y. Park, or me via email at gpark@cpmlegal.com and tvitale@cpmlegal.com.

Sincerely,

Theresa Vitale

THERESA E. VITALE

*Enclosures*

# EXHIBIT F

AHi SOLUTIONS
LOWERING THE INDEX™

To whom it may concern,

Enclosed you will find the only documents, information that remains in the possession of AHi Solutions, Inc, its Officers, and Staff.

Our organization no longer has any business with Nationwide Medical and all other items information have been purged. We only retain Staff & Patient information for extended periods.

Best,

Angelo Miller

Angelo Miller
AHi Solutions, Inc.
510-593-6009

400 29th Street #208 Oakland CA. 94609 P: 510-835-5050 F: 510-835-5023

# EXHIBIT G

LAW OFFICES
COTCHETT, PITRE & MCCARTHY, LLP
2716 OCEAN PARK BOULEVARD, SUITE 3088
SANTA MONICA, CALIFORNIA 90405
TELEPHONE (310) 392-2008
FACSIMILE (310) 392-0111
www.cpmlegal.com

SAN FRANCISCO BAY AREA
SEATTLE
NEW YORK

February 7, 2023

**VIA U.S. MAIL**
Attn: Angelo Miller
**AHI SOLUTIONS, INC.**
400 29th Street #208
Oakland, CA 94609

**Re:** ***U.S.A ex rel. Curt Canales and Doug Bellows v. Nationwide Medical, Inc.***
Case No. 2:20-CV-07736-MWF-PD
Document Production Follow-Up

Dear Mr. Miller,

My office represents Relators Curt Canales and Doug Bellows in the above-referenced action against Defendant Nationwide Medical, Inc. brought under the Federal False Claims Act, 31 U.S.C. § 3729, that is pending in the U.S. District Court for the Central District of California.

I would like to schedule a call with you to discuss AHI Solutions, Inc's Document Production in response to the subpoena served on AHI Solutions, Inc. on November 4, 2022. Given the limited production from AHI Solutions, Inc., I wanted to confirm whether your client has any other items responsive to the subpoena or not.

I understand the challenges associated with gathering and producing documents, so I'd be happy to discuss to make it as convenient as possible for them if so.

If you have any questions or concerns regarding scheduling, the subpoena, or the requested documents, you can reach me via phone or email at (310) 392-2008 and tvitale@cpmlegal.com.

Sincerely,

Theresa Vitale

Theresa E. Vitale

# EXHIBIT H

LAW OFFICES
COTCHETT, PITRE & MCCARTHY, LLP
2716 OCEAN PARK BOULEVARD, SUITE 3088
SANTA MONICA, CALIFORNIA 90405
TELEPHONE (310) 392-2008
FACSIMILE (310) 392-0111
www.cpmlegal.com

SAN FRANCISCO BAY AREA
SEATTLE
NEW YORK

February 22, 2023

**VIA U.S. MAIL**
Attn: Angelo Miller
**AHI SOLUTIONS, INC.**
400 29th St. #208
Oakland, CA 94609

**Re:** ***U.S.A ex rel. Curt Canales and Doug Bellows v. Nationwide Medical, Inc.***
Case No. 2:20-CV-07736-MWF-PD
Document Production Follow-Up

Dear Mr. Miller,

My office represents Relators Curt Canales and Doug Bellows in the above-referenced action against Defendant Nationwide Medical, Inc. brought under the Federal False Claims Act, 31 U.S.C. § 3729, that is pending in the U.S. District Court for the Central District of California.

As I stated in my letter dated February 7, 2023, I would like to discuss AHI Solutions, Inc.'s document production in response to the subpoena served on AHI Solutions, Inc. on November 4, 2022, and enclosed hereto. Given the limited production from AHI Solutions, Inc., please confirm whether your client has any other items responsive to the subpoena.

Please be aware that if we do not receive a response from your client by March 7, 2023 we will be forced to initiate proceedings to compel all responsive documents.

If you have any questions or concerns regarding scheduling, the subpoena, or the requested documents, you can reach me via phone or email at (310) 392-2008 and tvitale@cpmlegal.com.

Sincerely,

Theresa Vitale

Theresa E. Vitale

# EXHIBIT I

JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: 650) 697-6000
Facsimile: (650) 697-0577

THERESA E. VITALE (SBN 333993)
tvitale@cpmlegal.com
**COTCHETT, PITRE & McCARTHY LLP**
2716 Ocean Park Boulevard, Suite 3088
Santa Monica, CA 90405
Telephone: (310) 392-2008
Facsimile: (310) 392-0111

*Attorneys for Relators*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* CURT CANALES and DOUG BELLOWS,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONWIDE MEDICAL, INC., a California Corporation; and DOES1-100,<br><br>Defendants. | CASE NO. CV 20-7736 MWF (PDx)<br><br>**NOTICE OF SUBPOENA** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** of the Subpoena to Produce Documents to AHI Solutions, Inc. attached hereto as **Exhibit A**.

Dated: November 3, 2022

**COTCHETT, PITRE & McCARTHY, LLP**

By: ___________________________
JUSTIN T. BERGER
THERESA E. VITALE
*Attorneys for Relators*

# EXHIBIT A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | | |
|---|---|---|
| USA ex rel. Curt Canales and Douglas Bellows<br>*Plaintiff*<br>v.<br>Nationwide Medical, Inc.<br>*Defendant* | ) | Civil Action No. 2:20-CV-07736-MWF-PD |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: AHI Solutions, Inc.; 400 29th St, #208 Oakland, CA 94609
Registered Agent: Angelo D. Miller

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Please see Attachment A. Additionally, please see Exhibit 1, by which certain materials may be designated confidential.

| Place: | Date and Time: |
|---|---|
| A&A Legal Service, Inc. 880 Mitten Rd #102, Burlingame, CA 94010<br>Email: lsolomon@aalegalservice.com | 11/30/2022 10:00 am |

❐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 11/02/2022

*CLERK OF COURT*

_______________________
*Signature of Clerk or Deputy Clerk*

OR

Theresa Vitale
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* ____________ , who issues or requests this subpoena, are:

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 2:20-CV-07736-MWF-PD

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________

on *(date)* ____________ .

❐ I served the subpoena by delivering a copy to the named person as follows: ______________________

______________________________________________ on *(date)* ____________ ; or

❐ I returned the subpoena unexecuted because: ______________________

______________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ____________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

**(i)** is a party or a party's officer; or

**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

# ATTACHMENT A

## DEFINITIONS

1. "YOU," and / or "YOUR" means (a) AHI SOLUTIONS, INC., and its domestic and foreign parents, affiliates, joint venturers, subsidiaries, divisions, predecessors, and successors, including but not limited to any entity of which it, directly or indirectly, at any time, acquired more than 50% of the assets by merger, consolidation, reorganization, purchase, or otherwise, and (b) any entity having at least a 25% legal or beneficial ownership interest in AHI SOLUTIONS, INC., and (c) all medical providers, physicians, surgeons, physician assistants, agents, attorneys, accountants, consultants, independent contractors, directors, employees, executives, officers, personnel, and representatives of any of the foregoing in subparagraphs (a) and (b), and any person or entity acting on behalf of any of the foregoing in subparagraphs (a) and (b) under an assumed name or otherwise.

2. "NATIONWIDE" means Nationwide Medical, Inc., as a California Corporation, and all agents, attorneys, accountants, consultants, independent contractors, directors, employees, executives, officers, personnel, and representatives of any of the foregoing, and any person or entity acting on behalf of any of the foregoing under an assumed name or otherwise.

3. "CPAP" means medical device components that treat sleep apnea, including Continuous Positive Airway Pressure devices and parts and Bilevel Positive Airway Pressure devices and parts.

4. "DOCUMENT" or "DOCUMENTS" refers to all hard-copy and electronic writings of any kind, including the original and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise. This definition of "DOCUMENTS" includes, without limitation, correspondence, memoranda, notes, handwritten notes, diaries, personal diaries,

calendars, statistics, spreadsheets, letters, electronic mail, telegrams, minutes of meetings, contracts, reports, records of any events, studies, audits, text of any kind, statements, receipts, IRS returns, summaries, maps, drawings, working papers, pamphlets, books, periodicals, prospectuses, inter-office and intra-office communications, offers, notations of any sort (including regarding conversations, telephone calls, meetings or other communications), bulletins, printed matters, tapes of all kinds, computer printouts, computerized or electronically stored data, wire to wire communications, teletypes, telefaxes, invoices, worksheets, and each and every electronic or paper draft, alteration, modification, change or amendment of any kind of the foregoing. The definition of "DOCUMENTS" is also intended to include graphic material, including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, and motion pictures, including digitally stored graphic material or graphic material stored on computers.

5. "COMMUNICATION" and "COMMUNICATIONS" means any letter, memorandum, e-mail, note, recording, or other transmission of information from one person or entity to another or between or among two or more persons or entities. The term includes but is not limited to conversations or discussions, whether in person or by means of telephone, teleconference, e-mail, telecopier, or other media, and also includes the circumstances by which YOU came into possession of the document evidencing the communication.

6. "RELEVANT TIME PERIOD" shall mean January 1, 2010 to the present.

**REQUEST FOR PRODUCTION OF DOCUMENTS**

**REQUEST NO. 1**

Any and all COMMUNICATIONS between YOU and NATIONWIDE concerning or referencing any agreements, side letters, or side deals, including but

not limited to Equipment Consignment and Services Agreements, YOU negotiated or entered into with NATIONWIDE at any point in time.

**REQUEST NO. 2**

Any and all DOCUMENTS concerning or referencing any agreements, side letters, or side deals, including but not limited to Equipment Consignment and Services Agreements, YOU negotiated or entered into with NATIONWIDE at any point in time.

**REQUEST NO. 3**

Any and all COMMUNICATIONS between YOU and NATIONWIDE concerning or referencing the payment amount and/or payment rate for any agreement, side letter, or side deal produced in response to REQUEST NO. 2, including but not limited to any underlying data or information relied upon concerning the payment amount and/or payment rate.

**REQUEST NO. 4**

Any and all COMMUNICATIONS between YOU and NATIONWIDE concerning, referencing and/or reflecting patient referrals during the RELEVANT TIME PERIOD.

**REQUEST NO. 5**

Any and all DOCUMENTS concerning, referencing and/or reflecting the type, provider, location, and duration of services pursuant to any agreement, side letter, or side deal produced in response to REQUEST NO. 2.

**REQUEST NO. 6**

Any and all DOCUMENTS in YOUR possession, custody or control concerning or referencing arrangements with CPAP suppliers other than NATIONWIDE during the RELEVANT TIME PERIOD.

//

//

**REQUEST NO. 7**

ALL of YOUR billing, reimbursement, payment, recoupment, refund, and/or reconciliation data for all patients that YOU serviced pursuant to any agreements, side letters, or side deals, including but not limited to any Equipment Consignment and Services Agreement, with NATIONWIDE during the RELEVANT TIME PERIOD.

**REQUEST NO. 8**

ALL DOCUMENTS concerning, referencing and/or reflecting goods or services that YOU provided pursuant to any agreements, side letters, or side deals, including but not limited to any Equipment Consignment and Services Agreement, with NATIONWIDE during the RELEVANT TIME PERIOD.

**REQUEST NO. 9**

ALL DOCUMENTS identifying YOUR employees and/or independent contractors during the RELEVANT TIME PERIOD.

# Exhibit 1

JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
THERESA E. VITALE (SBN 333993)
tvitale@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 692-3606

*Attorneys for Relators*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA *ex rel.* CURT CANALES and DOUG BELLOWS,

Plaintiffs,

v.

NATIONWIDE MEDICAL, INC., a California Corporation; and DOES 1-100, inclusive,

Defendants.

Case No. 2:20-cv-07736-MWF-PD

**STIPULATED PROTECTIVE ORDER** [1]

[1] This Stipulated Protective Order is substantially based on the model protective order provided under Magistrate Judge Patricia Donahue's Procedures.

1. A. PURPOSES AND LIMITATIONS

Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted, including, but not limited to, confidential health information regarding non-parties. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.

B. GOOD CAUSE STATEMENT

This action is likely to involve confidential health information regarding non-parties for which special protection from public disclosure and from use for any purpose other than prosecution of this action is warranted. Such confidential materials and information consist of, among other things, confidential health and medical records of third-party patients, information otherwise generally unavailable to the public, or which may be privileged or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law. Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure the parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial, to address their handling at the end of litigation, and serve the ends of justice, a protective order for such information is justified in this matter. It is the intent of the parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public manner, and there is good cause why it should not be part of the public record of this case.

///

C. ACKNOWLEDGMENT OF PROCEDURE FOR FILING UNDER SEAL

The parties further acknowledge, as set forth in Section 12.3, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Local Civil Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

There is a strong presumption that the public has a right of access to judicial proceedings and records in civil cases. In connection with non-dispositive motions, good cause must be shown to support a filing under seal. See Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1176 (9th Cir. 2006), Phillips v. Gen. Motors Corp., 307 F.3d 1206, 1210-11 (9th Cir. 2002), Makar-Welbon v. Sony Electrics, Inc., 187 F.R.D. 576, 577 (E.D. Wis. 1999) (even stipulated protective orders require good cause showing), and a specific showing of good cause or compelling reasons with proper evidentiary support and legal justification, must be made with respect to Protected Material that a party seeks to file under seal. The parties' mere designation of Disclosure or Discovery Material as CONFIDENTIAL does not—without the submission of competent evidence by declaration, establishing that the material sought to be filed under seal qualifies as confidential, privileged, or otherwise protectable—constitute good cause.

Further, if a party requests sealing related to a dispositive motion or trial, then compelling reasons, not only good cause, for the sealing must be shown, and the relief sought shall be narrowly tailored to serve the specific interest to be protected. See Pintos v. Pacific Creditors Ass'n, 605 F.3d 665, 677-79 (9th Cir. 2010). For each item or type of information, document, or thing sought to be filed or introduced under seal in connection with a dispositive motion or trial, the party seeking protection must articulate compelling reasons, supported by specific facts and legal justification, for the requested sealing order. Again, competent evidence supporting the application to file documents under seal must be provided by declaration.

Any document that is not confidential, privileged, or otherwise protectable in its entirety will not be filed under seal if the confidential portions can be redacted. If documents can be redacted, then a redacted version for public viewing, omitting only the confidential, privileged, or otherwise protectable portions of the document, shall be filed. Any application that seeks to file documents under seal in their entirety should include an explanation of why redaction is not feasible.

2. DEFINITIONS

2.1 Action: United States of America *ex rel*. Curt Canales and Doug Bellows v. Nationwide Medical, Inc., Case No. 2:20-cv-07736-MWF-PD.

2.2 Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

2.3 "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c), and as specified above in the Good Cause Statement. Confidential Information or Items also include, but are not limited to, "Confidential Health Information," which includes "individually identifiable health information" as defined in 45 C.F.R. § 160.103, and "medical information" as defined in Cal. Civil Code § 56.05(j). Any Confidential Health Information/medical information produced may be subject to the provisions of the Privacy Act, 5 U.S.C. § 552a; to the provisions of 45 C.F.R. §§ 164.102-164.534; to the provisions of 42 U.S.C. § 1306; to the provisions of Cal. Civil Code §§ 56.05 et. seq., the California Confidentiality of Medical Information Act; to the peer review confidentiality provisions set forth in California Evidence Code § 1157, and/or to the privacy provisions of various state(s) law(s), and there may be no waiver or authorization by the patient or other holder of privilege/protection to produce the records to any entity outside one of the Parties. All patient files, medical records and documents, or other materials containing individually identifiable health information, and the proceedings and records of peer review committees, shall be deemed to be CONFIDENTIAL.

2.4 Counsel: Outside Counsel of Record and House Counsel (as well as their support staff).

2.5 Designating Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL."

2.6 Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.7 Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this Action.

2.8 House Counsel: attorneys who are employees of a party to this Action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.9 Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.10 Outside Counsel of Record: attorneys who are not employees of a party to this Action but are retained to represent or advise a party to this Action and have appeared in this Action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party and includes support staff.

2.11 Party: any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.12 Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this Action.

2.13 Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.14 Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL."

2.15 Receiving Party: a Party that receives Disclosure or Discovery Material from a Producing Party.

3. SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.

Any use of Protected Material at trial shall be governed by the orders of the trial judge. This Order does not govern the use of Protected Material at trial.

4. DURATION

FINAL DISPOSITION of the action is defined as the conclusion of any appellate proceedings, or, if no appeal is taken, when the time for filing of an appeal has run. Except as set forth below, the terms of this protective order apply through FINAL DISPOSITION of the action. The parties stipulate that they will be contractually bound by the terms of this agreement beyond FINAL DISPOSITION but will have to file a separate action for enforcement of the agreement once all proceedings in this case are complete.

Once a case proceeds to trial, information that was designated as CONFIDENTIAL or maintained pursuant to this protective order used or introduced as an exhibit at trial becomes public and will be presumptively available to all members of the public, including the press, unless compelling reasons supported by specific factual findings to proceed otherwise are made to the trial judge in advance of the trial. See Kamakana, 447 F.3d at 1180-81 (distinguishing "good cause" showing for sealing documents produced in discovery from "compelling reasons" standard when merits-related documents are part of court record). Accordingly, for such materials, the terms

of this protective order do not extend beyond the commencement of the trial.

5. DESIGNATING PROTECTED MATERIAL

5.1 Exercise of Restraint and Care in Designating Material for Protection.

Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the inapplicable designation.

5.2 Manner and Timing of Designations.

Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix at a minimum, the legend "CONFIDENTIAL" (hereinafter "CONFIDENTIAL legend"), to each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party

also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

A Party or Non-Party that makes original documents available for inspection need not designate them for protection until after the inspecting Party has indicated which documents it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "CONFIDENTIAL." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL legend" to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b) for testimony given in depositions that the Designating Party identify the Disclosure or Discovery Material on the record, before the close of the deposition all protected testimony.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information is stored the legend "CONFIDENTIAL." If only a portion or portions of the information warrants protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

5.3 Inadvertent Failures to Designate.

If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

Moreover, any document containing Confidential Health Information/medical

information shall be treated as Protected Material regardless of whether or not such a designation is included in or on the document.

6. CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1 Timing of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.

6.2 Meet and Confer. The Challenging Party shall initiate the dispute resolution process under Local Rule 37.1 et seq.

6.3 The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived or withdrawn the confidentiality designation, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

7. ACCESS TO AND USE OF PROTECTED MATERIAL

7.1 Basic Principles.

A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending, or attempting to settle this Action. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the Action has been terminated, a Receiving Party must comply with the provisions of section 13 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2 Disclosure of "CONFIDENTIAL" Information or Items.

Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated

"CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this Action;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Action;

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) the court and its personnel;

(e) court reporters and their staff;

(f) professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(h) during their depositions, witnesses, and attorneys for witnesses, in the Action to whom disclosure is reasonably necessary provided: (1) the deposing party requests that the witness sign the form attached as Exhibit 1 hereto; and (2) they will not be permitted to keep any confidential information unless they sign the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material may be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order; and

(i) any mediator or settlement officer, and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions.

///

8. PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this Action as "CONFIDENTIAL," that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

9. A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a) The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

Case 2:23-cv-00053-ADG Document 1-1 Filed 01/20/23 Page 149 of 157

(b) In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(1) promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2) promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Action, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3) make the information requested available for inspection by the Non-Party, if requested.

(c) If the Non-Party fails to seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

10. UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound"

that is attached hereto as Exhibit A.

11. INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court.

12. MISCELLANEOUS

12.1 Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

12.2 Right to Assert Other Objections. By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

12.3 Filing Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. If a Party's request to file Protected Material under seal is denied by the court, then the Receiving Party may file the information in the public record unless otherwise instructed by the court.

13. FINAL DISPOSITION

After the final disposition of this Action, as defined in paragraph 4, within 60 days

of a written request by the Designating Party, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60 day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2)affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material.

14. Any violation of this Order may be punished by any and all appropriate measures including, without limitation, contempt proceedings and/or monetary sanctions.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

Dated: September 19, 2022

**COTCHETT, PITRE & McCARTHY, LLP**

By: /s/Justin T. Berger
JUSTIN T. BERGER
THERESA E. VITALE
*Attorneys for Relators*

Dated: September 19, 2022

**JACOBS & DODDS**

By: /s/Paul N. Jacobs
PAUL N. JACOBS
*Attorney for Defendant Nationwide Medical, Inc.*

Dated: September 19, 2022

**BROWN & FORTUNATO, P.C.**

By: /s/Bradley W. Howard
BRADLEY W. HOWARD
JARED W. BARTON
*Attorneys for Defendant Nationwide Medical, Inc.*

**FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.**

Dated: September 20, 2022



HON. PATRICIA DONAHUE
United States Magistrate Judge

Case 2:23-cv-03730-ODW-PD Document 1-1 Filed 05/11/23 Page 153 of 157

EXHIBIT A

ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, ______________________________ [print or type full name], of ______________________________ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Central District of California on [date] in the case of United States of America *ex rel*. Curt Canales and Doug Bellows v. Nationwide Medical, Inc., Case No. 2:20-cv-07736-MWF-PD. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order. I further agree to submit to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action. I hereby appoint ______________________________ [print or type full name] of ______________________________ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.

Date: ______________________

City and State where sworn and signed: ____________________________________

Printed name: _______________________________________________

Signature: __________________________________________________

LAW OFFICES
COTCHETT, PITRE & MCCARTHY, LLP

# PROOF OF SERVICE

I am employed in the County of Los Angeles. I am over the age of 18 years and not a party to this action. My business address is the Law Offices of Cotchett, Pitre & McCarthy, LLP, 2716 Ocean Park Blvd, Santa Monica, California 90405. On this day, I served the following document(s) in the manner described below:

**1. NOTICE OF SUBPOENA**

✓ **VIA ELECTRONIC SERVICE:** My e mail address is amason@cpmlegal.com. I am readily familiar with this firm's practice for causing documents to be served by e-mail. Following that practice, I caused the aforementioned document(s) to be emailed to the addressee(s) specified below.

**[SEE ATTACHED SERVICE LIST]**

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed at Santa Monica, California, on November 3, 2022.

ASHLEY MASON

## SERVICE LIST

| | |
|---|---|
| Bradley W. Howard<br>Jared W. Barton<br>**BROWN & FORTUNATO, P.C.**<br>905 S. Fillmore Suite 400<br>P.O. Box 9418<br>Amarillo, TX 79510<br>bhoward@bf-law.com<br>jbarton@bf-law.com | **COUNSEL FOR DEFENDANTS**<br>NATIONWIDE MEDICAL, INC. |
| Paul N. Jacobs<br>**JACOBS & DODDS**<br>2151 Michelson Drive, Suite 168<br>Irvine, CA 92612<br>pauljacobs@irvinebusinesslawyers.com | **COUNSEL FOR DEFENDANTS**<br>NATIONWIDE MEDICAL, INC. |

**PROOF OF SERVICE**

I am employed in the County of Los Angeles. I am over the age of 18 years and not a party to this action. My business address is the Law Offices of Cotchett, Pitre & McCarthy, LLP, 2716 Ocean Park Blvd, Santa Monica, California 90405. On this day, I served the following document(s) in the manner described below:

1. **JUSTIN T. BERGER'S DECLARATION IN SUPPORT OF *QUI TAM* PLAINTIFFS' MOTION TO COMPEL COMPEL COMPLIANCE WITH SUBPOENA**

✓ **VIA ELECTRONIC SERVICE:** My e mail address is gpark@cpmlegal.com. I am readily familiar with this firm's practice for causing documents to be served by e-mail. Following that practice, I caused the aforementioned document(s) to be emailed to the addressee(s) specified below.

**[SEE ATTACHED SERVICE LIST]**

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed at Santa Monica, California, on March 22, 2023.

*/s/Ashley Mason*
ASHLEY MASON

## SERVICE LIST

| | |
|---|---|
| ***VIA ECF***<br>Jason Pepe<br>Bradley W. Howard<br>Jared W. Barton<br>**BROWN & FORTUNATO, P.C.**<br>905 S. Fillmore Suite 400<br>P.O. Box 9418<br>Amarillo, TX 79510<br>jpepe@bf-law.com<br>bhoward@bf-law.com<br>jbarton@bf-law.com | **COUNSEL FOR DEFENDANTS**<br>NATIONWIDE MEDICAL, INC. |
| ***VIA ECF***<br>Paul N. Jacobs<br>**JACOBS & DODDS**<br>2151 Michelson Drive, Suite 168<br>Irvine, CA 92612<br>pauljacobs@irvinebusinesslawyers.com | **COUNSEL FOR DEFENDANTS**<br>NATIONWIDE MEDICAL, INC. |
| ***VIA EMAIL & FIRST CLASS MAIL***<br>Angelo D. Miller<br>AHI SOLUTIONS, INC.<br>400 29th St. #208<br>Oakland, CA 94609 | **NON-PARTY**<br>AHI SOLUTIONS, INC. |